# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2010AP1639-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Erick O. Magett, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 344 Wis. 2d 518, 822 N.W.2d 736
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 16, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 11, 2013 |

| SOURCE OF APPEAL: | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Grant |
| JUDGE: | George S. Curry |

| JUSTICES: | |
|---|---|
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Andrew R. Hinkel*, assistant state public defender, and oral argument by *Andrew R. Hinkel*.

For the plaintiff-respondent, the cause was argued by *Eileen W. Pray*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2010AP1639-CR
(L.C. No. 2007CF44)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

   **v.**

**Erick O. Magett,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 16, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 DAVID T. PROSSER, J. This fact-intensive case focuses on the second phase of a bifurcated criminal trial in which the defendant entered a plea of not guilty by reason of mental disease or defect (NGI). The defendant, Erick Magett (Magett), was found guilty of a felony in the first phase of the trial. The jury was expected to determine whether the defendant met his burden on his NGI plea in the second phase. Under circumstances that will be explained, the Grant County Circuit Court, George S. Curry, Judge, dismissed Magett's NGI plea before commencement of the second phase in which the jury was to

determine Magett's "responsibility" for the crime. We review here an unpublished decision of the court of appeals[1] affirming the defendant's conviction. The issues presented may be stated as follows.

¶2 First, did the circuit court apply the wrong substantive law by requiring the defendant to produce expert testimony to carry his burden in the responsibility phase of a bifurcated criminal trial in which the issue was whether the defendant was not guilty by reason of mental disease or defect?

¶3 Second, did the circuit court err when it ruled that the defendant was not competent to testify as to his mental condition in the responsibility phase of a bifurcated criminal trial in which the issue was whether the defendant was not guilty by reason of mental disease or defect?

¶4 Third, did the circuit court err in dismissing the defendant's NGI plea before the responsibility phase of the trial, after the defendant indicated that he would not produce any evidence of his mental disease or defect in the responsibility phase except: (1) his own testimony that he "blacked out" for a few seconds when he punched a corrections officer; and (2) a video of the battery, both of which had been presented to the jury during the guilt phase of the trial?

---

[1] State v. Magett, No. 2010AP1639-CR, unpublished slip op. (Wis. Ct. App. Sept. 27, 2012).

¶5 Fourth, if the circuit court made any errors with respect to the responsibility phase of the defendant's trial, were the errors harmless?

¶6 We reach the following conclusions.

¶7 First, as a general rule, a defendant is not required to present expert testimony to prove the elements of his NGI defense. State v. Leach, 124 Wis. 2d 648, 666, 370 N.W.2d 240 (1985). Ordinarily, the defendant will offer expert testimony. He may also offer testimony by lay witnesses as well as his own testimony. As a practical matter, a defendant should offer evidence to supplement his own testimony because a defendant who testifies in the responsibility phase of his trial without corroboration is likely to be viewed as self-serving inasmuch as the purpose of his defense is to escape responsibility for his already established criminal conduct. In only an exceptional case with extraordinary facts may a defendant carry his burden in the responsibility phase of a criminal trial by relying solely on his own testimony.

¶8 Second, a defendant is competent to testify as to his mental condition in the responsibility phase of a criminal trial. However, a lay defendant does not have an unlimited, categorical right to give opinion testimony on the issue of mental disease or defect.

¶9 Third, a court should normally permit a defendant to offer his evidence in the responsibility phase of a trial before the court rules on his NGI defense. By allowing the defendant an opportunity to offer all his evidence, the court ensures that

3

any dismissal[2] or directed verdict is informed by full consideration of the defendant's position, conforms to Wis. Stat. § 805.14(1) and (3) or (4) (2009-10),[3] and reduces the procedural grounds for appeal.  There will not be many cases where the defendant's position is so bereft of merit that the court can conclude that there is no jury question as a matter of law before the defendant presents his evidence.

¶10  Fourth, we conclude here that the evidence to support the defendant's NGI defense was insufficient as a matter of law, so that any errors by the circuit court in refusing to allow the trial to proceed to the responsibility phase were harmless.  We conclude that no reasonable jury would have determined that the defendant had a mental disease or defect that caused him to lack substantial capacity to understand the wrongfulness of his conduct or to conform his conduct to the requirements of law.

¶11  Accordingly, we affirm the court of appeals' decision to uphold the defendant's conviction.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

---

[2] The circuit judge referred to the dismissal of Magett's NGI plea as a "directed verdict," but, as will be explained below, the judge's action is more appropriately characterized as a dismissal because, although Magett testified and offered all his evidence in the guilt phase, he was not allowed to reoffer "all evidence" in the responsibility phase.  Therefore, this opinion will refer to the rejection of Magett's NGI defense as a dismissal unless the opinion is quoting one of the parties or referring to their arguments.

[3] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

¶12 This case arises out of an incident at the Wisconsin Secure Program Facility (WSPF) in Boscobel in Grant County. The Wisconsin Department of Corrections describes WSPF as "Wisconsin's most secure facility," designed to manage and control "inmates who demonstrate serious behavioral problems in other settings." See Wisconsin Secure Program Facility, Wis. Dep't of Corr., http://doc.wi.gov/families-visitors/find-facility/wisconsin-secure-program-facility (last visited July 10, 2014). "Inmates transferred to WSPF have earned their way to this facility because of behaviors exhibited in alternate sites. They have jeopardized the safety and security of the facility, staff, and/or other inmates." Id.

¶13 Erick O. Magett was an inmate at WSPF on January 20, 2007. Magett, then 41, had a long criminal history before he was convicted of first-degree intentional homicide in 1990 and sentenced to life in prison.

¶14 The events that led to the charge in this case were set in motion by Magett's frustrations with his access to health care. In August 2005 Magett slipped in the shower and began complaining of pelvic pain. Magett testified that he had X-rays taken in October 2006. Although a medical technician told Magett that he had a fractured left pelvis, the prison doctor disagreed and informed Magett that there was no fracture. Magett expressed frustration about the level of medical treatment he was receiving and wrote the warden to say, "I do not want to put my hands on your officers, but if this keep [sic] going on, somebody going [sic] to end up getting hurt."

5

He also told the prison psychiatrist that he knew it would be wrong to take out his frustrations about the lack of medical treatment on the officers.

¶15 Magett's statements about hurting officers led WSPF to place him on restrictions.  Before WSPF allowed Magett to receive his meals, it required him to sit down with his legs crossed, put his head against the back wall, and place his hands behind his back.  Magett claimed that as a result of a fractured pelvis, he could not cross his legs when sitting down.  Because Magett would not sit in the required position, WSPF withheld his meals.  Magett claimed that WSPF refused to give him his meal on several occasions[4] and that he was unable to resolve the issue through written or oral complaints.  Therefore, on January 20, 2007, Magett decided to cover the camera in his cell because he knew that obscuring the camera would attract attention and eventually lead to a team of officers forcibly removing him from his cell.  WSPF assembled a show-of-force team to extract Magett from his cell, and the team members suited up in protective equipment consisting of helmets and padded jumpsuits.  It was during the extraction of Magett from his cell that Magett committed the battery that gave rise to this case.

¶16 Before the show-of-force team entered Magett's cell, both the team's supervisor and the team's leader asked Magett if

---

[4] There is some confusion about how many meals Magett actually missed.  At his sentencing hearing, Magett's attorney said that Magett received no food for two days prior to the incident on January 20, 2007, and also went without food for three days after.

he would come out voluntarily. Magett refused. In preparation for the cell extraction, and unbeknownst to the show-of-force team, Magett spread hand cream on his cell floor to slow the officers down. He claimed that the purpose of the hand cream was to hinder the officers and prevent them from hurting him. Magett put his mattress on the ground and stood on it so that he would not slip on the lubricated floor. Then he removed his shirt and assumed a "boxer stance" with raised fists as he waited for the team to enter.

¶17 As the team entered the cell, Magett's ingenuity with the hand cream caused several officers to lose their footing. Magett punched the officers in the helmet area as they struggled toward him. In the brief period of chaos, one of Magett's punches caused a cut on Officer Jeremy Caya's (Officer Caya) chin. Magett later testified (in the guilt phase of his trial) that during the incident, he "pretty much blacked out." When asked to clarify what he meant by "blacked out," Magett responded, "It was like I'm just gone." He insisted that he did not remember hurting Officer Caya, but he did remember the officers taking him out of his cell. The alleged "blackout" lasted from the time the officers came into the cell until the time they restrained him against the cell wall——an interval of a few seconds. Corrections officers videotaped the incident, and the jury saw the tape several times during the guilt phase of the trial.

¶18 Although Magett claimed not to remember hitting Officer Caya, he did seem to remember swinging his fists at the

7

corrections officers. The following exchange occurred during Magett's direct examination by his attorney:

> Q: And when [the corrections officers] came in, what did you do?
>
> A: I swung.
>
> Q: And why were you swinging your fists?
>
> A: Because they were swinging at me.
>
> Q: All right. And were you trying to hurt them?
>
> A: No, I wouldn't try to hurt nobody.

Magett went on to testify that he blacked out, and his attorney questioned him about how the corrections officers were hitting him. Magett testified that an officer was hitting him between his legs, that an officer was trying to break his wrist, and that an officer was choking him. Just a few questions later, Magett's attorney asked him what he remembered after the officers came through his cell door. Magett responded, "Not much." On cross-examination, Magett claimed that the officers punched him in the testicles five or six times.

¶19 Because he caused a cut on Officer Caya's chin, Magett was charged with battery by a prisoner contrary to Wis. Stat. § 940.20(1).[5] Magett entered a plea of not guilty and not guilty by reason of mental disease or defect and requested that the

---

[5] "Any prisoner confined to a state prison or other state, county or municipal detention facility who intentionally causes bodily harm to an officer, employee, visitor or another inmate of such prison or institution, without his or her consent, is guilty of a Class H felony." Wis. Stat. § 940.20(1).

court appoint Dr. Jonathan Lewis (Dr. Lewis), a psychologist, to perform a mental examination.[6]

¶20 During Dr. Lewis's psychological evaluation, Magett claimed that he was having auditory hallucinations, which began two weeks prior to the psychological evaluation. Dr. Lewis's review of Magett's past records from mental health officials indicated that Magett "showed no symptoms of thought disorder or other psychotic features," although he had some complaints of anxiety and depression and was diagnosed with antisocial personality disorder. Magett and Dr. Lewis also discussed the cell extraction incident, and Magett told Dr. Lewis that he had

---

[6] When a defendant enters an NGI plea, "the court may appoint at least one physician or at least one psychologist . . . to examine the defendant and to testify at the trial." Wis. Stat. § 971.16(2). The appointed physician or psychologist prepares a report, which is used as follows:

> [A]ny physician or psychologist appointed under sub. (2) shall file a report of his or her examination of the defendant with the judge, who shall cause copies to be transmitted to the district attorney and to counsel for the defendant. The contents of the report shall be confidential until the physician or psychologist has testified or at the completion of the trial. The report shall contain an opinion regarding the ability of the defendant to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct with the requirements of law at the time of the commission of the criminal offense charged . . . .

Wis. Stat. § 971.16(3). "If the defendant wishes to be examined by a physician, psychologist or other expert of his . . . own choice, the examiner shall be permitted to have reasonable access to the defendant for the purposes of examination." Wis. Stat. § 971.16(4).

not eaten for five days before the offense. As mentioned earlier, Magett's attorney clarified at the sentencing hearing that Magett had not eaten for two days before the incident. Magett said that "he knew that not coming out of his cell, and striking the officer were wrong but felt he was justified because of the poor attention to his problem with getting food . . . ." Dr. Lewis concluded:

> If Mr. Magett's account is to be credited he participated in the assault of the correctional officer knowingly as a way of attracting attention to his frustration and difficulties with not receiving any food for a period of 5 days. His description indicates that his behavior was purposeful and well considered, and was not in response to any disorder perception of reality due to mental illness.
>
> . . . .
>
> Absent indication of significant psychiatric illness, and given the disparity between his accounts of why the alleged offense occur[red] and the information in records of contacts with Mr. Magett at about the time, there is no basis for concluding that he was unable to appreciate the wrongfulness of his acts nor that he was unable to conform his behavior to the requirements of the law. Therefore it is my recommendation to the court that his plea of Not Guilty by Reason of Mental Disease or Defect not be endorsed.

¶21 When Dr. Lewis determined that Magett did not have a mental disease or defect, Magett attempted to find a new expert to do a private evaluation. Whatever the opinion of the second expert, Magett chose not to introduce it into evidence.

¶22 During the guilt phase of the trial on February 5, 2008, the jury found Magett guilty of battery by a prisoner. While the jury was deliberating, the court inquired about the

10

evidence that the defendant intended to present at the responsibility phase, and defense counsel responded that Magett would testify that "he was out of it" and would show the video of the cell extraction again. After the jury returned a guilty verdict, the court again asked——outside the jury's presence——what evidence the defense would present. The following exchange took place:

> THE COURT: Okay, the jury has found the defendant guilty, so that takes us to Phase 2. Now, I understood before we went out . . . that you weren't going to offer any evidence, [defense counsel]?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> THE COURT: No evidence at all?
>
> [DEFENSE COUNSEL]: Just . . . my client's testimony.
>
> THE COURT: From?
>
> [DEFENSE COUNSEL]: As what happened.
>
> THE COURT: Okay, then how are you going to meet your burden?
>
> [DEFENSE COUNSEL]: Your Honor, . . . he doesn't need a physician to determine whether he has a mental disease. It's a question for the jury to determine, not for a doctor to authorize.
>
> THE COURT: . . . I don't think that's the case law. I just got done reading the Leach case again and you have to have some evidence.
>
> [DEFENSE COUNSEL]: The evidence is what my client testified to.
>
> THE COURT: You have to have medical evidence.
>
> [DEFENSE COUNSEL]: I don't think it says that.

11

THE COURT: You need to have some evidence that he has a mental disease or defect.  Otherwise, . . . how can the jury just speculate?

[DEFENSE COUNSEL]: Well, at the time of the incident he said he blacked out.  He doesn't have any remembrance of what happened.  I think that fits the definition——

THE COURT: Of what?

[DEFENSE COUNSEL]: Memory.  He had a loss of memory.

THE COURT: That's not a mental disease or defect.

¶23 Magett's attorney went on to argue that Magett's blacking out and loss of memory fit the definition of mental disease or defect and that she had nothing to offer but the defendant's prior testimony to this effect.[7]  The court responded that the jury already heard Magett's testimony and the defense needed something more to show mental disease or defect.  The court summarized the elements of an NGI plea and said, "You have to have evidence first of all of mental disease, and second of all you have to have testimony that he's unable to conform his behavior."  Later, the court stated that "a doctor has to make the second part of the analysis."  Giving a hypothetical, the court declared:

> Even if he can testify that he suffered from, let's say, schizophrenia, he still would have to have a doctor to come in and say that at the time of this incident, that affected his ability to know the difference and appreciate the wrongfulness of his conduct and conform it to the requirements of the law.

---

[7] When the judge told Magett's attorney that she needed some evidence, she responded, "The evidence is what my client testified to."  Thus, the defense suggested that its only evidence was the testimony from the guilt phase of the trial.

12

And without a doctor coming in for the second part, . . . I don't think you can meet your burden.

With no other evidence to consider, the court stated:

> Your client's not competent to testify as to whether or not he lacks substantial capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. He doesn't have that capacity. He doesn't have the expertise to say that. . . . So unless you're going to produce some evidence to this jury, . . . I'm going to have to direct verdict for the State on that issue. . . . I thought you were going to probably call Dr. Lewis as a defense witness and bring out something in his report. And then [the prosecutor] would cross examine it, because . . . Dr. Lewis didn't back up this mental disease and defect. And he came to the opposite conclusion that he . . . did have the ability to understand what he was doing was wrong. So there's just no evidence to sustain that plea. As far as I can tell, you're not going to produce any evidence; therefore, if you're not going to produce any evidence, I don't have any choice but to find that no reasonable juror could conclude on . . . any basis that the defendant suffered from a mental disease or defect, much less that he lacked substantial capacity to appreciate the wrongfulness of his conduct or conform it to the requirements of the law as a result of the mental disease or defect.

¶24 Magett's attorney responded that neither the appointed expert nor Magett's own privately obtained expert had testimony favorable to Magett, so there would be no expert testimony to support the defense in the responsibility phase of the trial. The court decided not to allow Magett to introduce any more evidence because, based on defense counsel's description of the evidence, the court determined that "no evidence that is going to be produced . . . could give a reasonable juror the ability to conclude that the defendant suffered from a mental disease or defect." Following that, the court "conclude[d] as a matter of

13

law that the defendant [was] unable to meet his burden of proof on the defense of not guilty by reason of mental disease or defect . . . ." The court then entered judgment in accordance with the verdict and found Magett guilty of battery by a prisoner.

¶25 Magett filed an appeal alleging that the circuit court erred in denying him the right to proceed to the second phase of the bifurcated trial. State v. Magett, No. 2010AP1639-CR, unpublished slip op., ¶1 (Wis. Ct. App. Sept. 27, 2012). The court of appeals did not decide whether the circuit court erred in ending the trial after the guilt phase and instead held that any error was harmless. Id. The court of appeals noted that this case presents an unusual circumstance in which the defense introduced all its evidence in the guilt phase of the bifurcated trial. Id., ¶15. Because the defense had no new evidence relating to Magett's mental state, the court's refusal to hear the evidence in the second phase did "not undermine [the court of appeals'] confidence in the outcome." Id. (citation omitted). Given that the defense would produce no new evidence, and the evidence admitted in the guilt phase of the trial was insufficient to prove mental disease or defect by a preponderance, the court of appeals concluded that any error by the circuit court was harmless. Id., ¶¶19-20.

¶26 Magett petitioned this court for review, which we granted on March 11, 2013.

## II. STANDARD OF REVIEW

14

¶27 Magett challenges the circuit court's determination that expert testimony is required to prove mental disease or defect in the responsibility phase of the trial and that Magett was not competent to testify about his own mental health. Normally, the admissibility of evidence, including expert testimony, is within the circuit court's discretion. Brown Cnty. v. Shannon R., 2005 WI 160, ¶37, 286 Wis. 2d 278, 706 N.W.2d 269; State v. Sharp, 180 Wis. 2d 640, 649, 511 N.W.2d 316 (Ct. App. 1993). However, a circuit court erroneously exercises its discretion if it applies the wrong legal standard. Shannon R., 286 Wis. 2d 278, ¶37; Sharp, 180 Wis. 2d at 649. "[W]hether the circuit court applied the correct legal standard . . . is a question of law that we review de novo." State v. Kramer, 2001 WI 132, ¶17, 248 Wis. 2d 1009, 637 N.W.2d 35 (citation omitted).

¶28 Magett also challenges the circuit court's decision to grant a "directed verdict" before he presented evidence in the responsibility phase of the trial. Under Wis. Stat. § 805.14(1):

> No motion challenging the sufficiency of the evidence as a matter of law . . . shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

When a circuit court follows the proper procedure to dismiss a case or direct a verdict, an appellate court will uphold the decision unless the circuit court "was clearly wrong." Leach, 124 Wis. 2d at 665 (citation omitted). Although an appellate

15

court will uphold a circuit court's substantive decision in these circumstances unless it is clearly wrong, the question of whether the circuit court has the <u>authority</u> to dismiss a case or direct a verdict before the defendant has an opportunity to present his evidence in the responsibility phase of a trial "is a question of law that this court reviews de novo." <u>See</u> <u>State v. Melton</u>, 2013 WI 65, ¶22, 349 Wis. 2d 48, 834 N.W.2d 345 (citing <u>State v. McClaren</u>, 2009 WI 69, ¶14, 318 Wis. 2d 739, 767 N.W.2d 550).

¶29 Finally, we must consider whether any error by the circuit court was harmless. The harmless error inquiry is a question of law that this court reviews de novo. <u>Weborg v. Jenny</u>, 2012 WI 67, ¶43, 341 Wis. 2d 668, 816 N.W.2d 191. The harmless error rule in Wis. Stat. § 805.18 applies to criminal proceedings via Wis. Stat. § 972.11(1). <u>State v. Harvey</u>, 2002 WI 93, ¶39, 254 Wis. 2d 442, 647 N.W.2d 189. An error is harmless unless "the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial." Wis. Stat. § 805.18(2). Thus, the harmless error inquiry is whether it is beyond a reasonable doubt that the jury would have come to the same conclusion absent the error. <u>Harvey</u>, 254 Wis. 2d 442, ¶46 (citing <u>Neder v. United States</u>, 527 U.S. 1, 18 (1999)). The alternative wording of the test is whether it was "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." <u>State v. Mayo</u>, 2007 WI 78, ¶47, 301

16

Wis. 2d 642,    734   N.W.2d 115   (citations   omitted)   (internal quotation marks omitted).

¶30  In  conducting  a  harmless  error  analysis,  a  reviewing court  will  have  greater  confidence  in  the  circuit  court's decision  when  the  evidence  that  was  not  subject  to  error strongly supported the outcome and when the erroneously excluded evidence was peripheral.  Martindale v. Ripp, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698.

                          III. DISCUSSION

¶31  Magett  alleges  that  the  circuit  court  applied  the wrong  substantive  law  and  that  the  court  erred  in  preventing Magett from presenting his evidence in the responsibility phase of the trial.  Magett also contends that the errors were not harmless.  We address Magett's claims below, but we begin with a brief  discussion  of  bifurcated  trials  and  the  definition  of mental disease or defect in Wisconsin.

## A. The Bifurcated Trial and the Definition of Mental Disease or Defect

¶32  We  note  at  the  outset  that  a  criminal  defendant's right  to  an  NGI  defense  is  a  statutory  right  that  is  not guaranteed  by  either  the  United  States  or  Wisconsin Constitutions.  Medina v. California, 505 U.S. 437, 449 (1992) (citing  Powell v. Texas, 392 U.S. 514, 536-37 (1968)) ("[W]e have  not  said  that  the  Constitution  requires  the  States  to recognize the insanity defense."); State v. Burton, 2013 WI 61, ¶9, 349 Wis. 2d 1, 832 N.W.2d 611 ("[D]efendants do not have a fundamental  right  to  an  insanity  plea . . . ."); State  v.

17

_Francis_, 2005 WI App 161, ¶1, 285 Wis. 2d 451, 701 N.W.2d 632 ("Neither the federal constitution nor our state constitution confers a right to an insanity defense or plea."). Nor does either constitution guarantee a right to a bifurcated trial. _Spencer v. Texas_, 385 U.S. 554, 568 (1967) ("Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law . . . ."); _State ex rel. La Follette v. Raskin_, 34 Wis. 2d 607, 625, 150 N.W.2d 318 (1967) (noting that the Supreme Court of the United States "has not compelled a two-part trial as a matter of constitutional law or as a matter of federal procedure"); _see also_ § 1, ch. 221, Laws of 1911 (repealing bifurcation for an "insanity" defense, which suggests a unitary trial is not unconstitutional).

¶33 This case relates to the bifurcated trial described in Wis. Stat. §§ 971.15 and 971.165. A bifurcated criminal trial consists of two phases: (1) the guilt phase; and (2) the responsibility phase. When a criminal defendant pleads not guilty and not guilty by reason of mental disease or defect, the jury hears evidence relating to the defendant's guilt in the first phase of the trial, and if the jury finds the defendant guilty, the trial proceeds to the second phase. Wis. Stat. § 971.165(1)(a). In the second phase, the jury considers whether the defendant had a mental disease or defect at the time of the crime and whether, "as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his

18

or her conduct to the requirements of law."  Wis. Stat. § 971.15(1).

¶34  The responsibility phase described above has evolved over time and has now become close to a civil trial.

¶35  The history of NGI trials is instructive.  Wisconsin has recognized an insanity defense since statehood.  Wis. Rev. Stat. ch. 148, § 13 (1849).[8]  In 1878, as part of a general revision of the statutes, the legislature separated the insanity determination (or responsibility) phase of a criminal trial from the "main case" and directed that the responsibility phase be tried first.  Wis. Rev. Stat. ch. 191, §§ 4697-99 (1878).[9]  This

---

[8] The 1849 Revised Statutes provided:

> When any person, indicted for an offence, shall on trial be acquitted by the jury by reason of insanity, the jury, in giving their verdict of not guilty, shall state that it was given for such cause; and thereupon, if the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the community, the court may order him to be committed to prison, or may give him into the care of his friends, if they shall give bonds with surety to the satisfaction of the court, conditioned that he shall be well and securely kept, otherwise he shall be discharged.

Wis. Rev. Stat. ch. 148, § 13 (1849).

[9] Wisconsin Rev. Stat. ch. 191, § 4697 (1878) says that when a defendant pursues an insanity defense with an NGI plea:

> [T]he court shall order a special plea, setting up and alleging such insanity, to be filed on his behalf, with the plea of not guilty, and the special issue thereby made shall first be tried, by the jury selected and sworn to try said cause; and, if such jury shall find, upon such special issue, that such

19

procedure lasted until the 1911 session of the legislature when the separation was discontinued.  § 1, ch. 221, Laws of 1911.[10]

¶36  In 1967 this court reinstalled bifurcation but required the guilt phase to precede the responsibility phase. See Raskin, 34 Wis. 2d at 623, 627.   The legislature codified Raskin's bifurcation procedure in Wis. Stat. § 971.175 (1969-70).  See Burton, 349 Wis. 2d 1, ¶46 (citing § 63, ch. 255, Laws of 1969).   The legislature has since recodified bifurcation in Wis. Stat. § 971.165 but "maintained 'the basic bifurcated trial

---

> accused person was so insane, at the time of the commission of such alleged offense, they shall, also, find him not guilty of such offense, for that reason . . . .

The Report and Explanatory Notes of the Revisers of the Statutes, Accompanying the Bill to Revise the General Laws of Wisconsin explained why the insanity defense was revised in 1878:

> [The insanity defense] is a difficult and complicated question in all cases, and its consideration and decision should not be further complicated and confused with the mass of evidence in the main case, but should be specially considered and decided upon its own merits. This is fully provided for by special plea.  It is to be filed with the general issue and is to be tried first.  It is needless to have two juries and much more expensive.

Report and Explanatory Notes of the Revisers of the Statutes, Accompanying the Bill to Revise the General Laws of Wisconsin, submitted to the Legislature of 1878, 314 (1878).

[10] The 1911 revision of the statute kept much of the same language as the 1878 version, but it required a unitary rather than a bifurcated trial.   The 1911 version of the statute provided that the NGI issue "shall . . . be tried . . . and determined by the jury with the plea of not guilty . . . ." § 1, ch. 221, Laws of 1911 (first two ellipses in original).

20

procedure with its sequential order of proof as first established in Raskin.'" Id. (quoting State v. Murdock, 2000 WI App 170, ¶23, 238 Wis. 2d 301, 617 N.W.2d 175); see 1987 Wis. Act 86.

¶37 As the bifurcation procedure evolved, so did the burden of proof for showing mental disease or defect. Before this court reinstalled bifurcation in 1967, the state had to demonstrate beyond a reasonable doubt that the defendant did not have a mental disease or defect. See State v. Esser, 16 Wis. 2d 567, 588, 115 N.W.2d 505 (1962); see also Wis. Stat. § 957.11 (1967).[11] For many years, the state had to prove that the defendant did not have a mental disease or defect under a version of the M'Naghten[12] definition of mental disease or

---

[11] "[I]f the jury finds that the defendant was insane or feeble-minded or that there is reasonable doubt of his sanity or mental responsibility at the time of the commission of the alleged crime, [the jury] shall find the defendant not guilty because insane or feeble-minded." Wis. Stat. § 957.11(1) (1967).

[12] M'Naghten's Case was an English decision in which the House of Lords determined that a defendant is insane if, "at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." State v. Esser, 16 Wis. 2d 567, 575 & n.19, 115 N.W.2d 505 (1962) (citing M'Naghten's Case, (1843) 8 Eng. Rep. 718 (H.L.); 10 Cl. & Fi. 200, 210-11). Wisconsin's version of the M'Naghten rule stated that insanity was "such abnormal mental condition, from any cause, as to render the accused at the time of committing the alleged criminal act, incapable of distinguishing between right and wrong and so unconscious at the time of the nature of the act which he is committing . . . ." Oborn v. State, 143 Wis. 249, 268, 126 N.W. 737 (1910).

21

defect. See Esser, 16 Wis. 2d at 597; see also M'Naghten's Case, (1843) 8 Eng. Rep. 718 (H.L.); 10 Cl. & Fi. 200. However, the tide began to turn when this court decided to give the defendant the choice to take on the burden to prove mental disease or defect by a preponderance of the evidence under the less stringent American Law Institute (ALI) definition[13] of insanity. State v. Shoffner, 31 Wis. 2d 412, 427, 143 N.W.2d 458 (1966).

¶38 The ALI definition is less rigorous than the M'Naghten version "both because it permits a finding of insanity upon an additional ground, and because it requires a lack of substantial capacity and does not imply that a total lack of capacity is required." Esser, 16 Wis. 2d at 596. When the legislature codified Raskin in 1969, it adopted a new standard and also shifted the burden to the defendant to prove mental disease or defect by a preponderance of the evidence. § 63, ch. 255, Laws of 1969. The definition of "mental disease or defect" that applies to this case is almost identical to the ALI definition: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct

---

[13] "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." Model Penal Code § 4.01(1) at 66 (Proposed Official Draft 1962) (brackets in original).

to the requirements of law." Wis. Stat. § 971.15(1). While the statutes do not define "mental disease or defect," the Wisconsin criminal jury instructions provide a definition: "Mental disease or defect is an abnormal condition of the mind which substantially affects mental or emotional processes." Wis JI——Criminal 605 (footnote omitted).

¶39 The history of trials involving NGI pleas demonstrates that the current responsibility phase has undergone a transformation from a criminal proceeding to something close to a civil trial. As already noted, the defendant has the burden of proof to show mental disease or defect by the greater weight of the credible evidence, the same burden imposed for most issues in civil trials. See Kuehn v. Kuehn, 11 Wis. 2d 15, 26, 104 N.W.2d 138 (1960) (noting that the proof required to carry the burden "in ordinary civil cases may be attained by or be based on a mere or fair preponderance of the evidence"). In the responsibility phase, a judge may grant a motion to dismiss the NGI defense or direct a verdict in favor of the state if the defendant cannot produce sufficient evidence to show mental disease or defect. See Leach, 124 Wis. 2d at 663. In contrast, the judge may not direct a verdict against a criminal defendant in a criminal trial because it is up to the jury to find whether the state has proven all essential elements of a crime beyond a reasonable doubt. State v. Peete, 185 Wis. 2d 4, 19, 517 N.W.2d 149 (1994). Also, because the responsibility phase is not a criminal proceeding, the defendant need obtain only a five-sixths verdict on the issue of mental disease or defect to

carry his burden. State v. Koput, 142 Wis. 2d 370, 396-97, 418 N.W.2d 804 (1988).

¶40 Considering the elements of civil procedure in the responsibility phase, "it is demonstrably evident that the responsibility phase is not a part of a 'criminal' trial." Id. at 395. The civil hues of the responsibility phase, coupled with the fact that bifurcation and the NGI plea are statutory in nature, not constitutional, remove the proceeding from the exacting demands of criminal proceedings and leave it in a category of its own. See id. at 394-97.

B. Expert Testimony in the Responsibility Phase of a Bifurcated Trial

¶41 Magett argues that the court erred in requiring expert testimony to prove mental disease or defect and in stating that the defendant is not competent to testify regarding his own mental health. Although expert testimony may be helpful to a defendant in the responsibility phase of the trial, "[a] favorable expert opinion is not an indispensable prerequisite to a finding of mental disease or defect."[14] Leach, 124 Wis. 2d at 666.

---

[14] "From a purely technical standpoint, one could argue that because the jury is not bound by medical definitions or labels, Wis. [Stat.] § 971.15 does not require such an opinion or even an expert diagnosis of any particular disability." 9 Christine M. Wiseman & Michael Tobin, Criminal Practice & Procedure § 17:40, at 549 (Wisconsin Practice Series, 2d ed. 2008) (citing State v. Leach, 124 Wis. 2d 648, 666, 370 N.W.2d 240 (1985)). However, from a practical standpoint, if a defendant were to try to carry his burden in the responsibility phase of the trial without offering an expert's opinion, he would risk a motion for dismissal or for a directed verdict from the prosecution. Id.

24

¶42 Leach is consistent with other cases that have determined that "expert testimony is required only if the issue to be decided by the jury is beyond the general knowledge and experience of the average juror." State v. Perkins, 2004 WI App 213, ¶16, 277 Wis. 2d 243, 689 N.W.2d 684 (quoting State v. Whitaker, 167 Wis. 2d 247, 255, 481 N.W.2d 649 (Ct. App. 1992)). In Perkins, the court determined that no expert was required to testify as to a rape victim's mental illness or deficiency. Id., ¶¶19-20. The victim's caregiver testified that the victim could not carry on an intelligible conversation, could not remember things earlier in the day, and needed constant supervision because of her mental issues. Id., ¶22. The court noted that no statute required expert testimony on the victim's mental condition, and no Wisconsin precedent existed on the issue. Id., ¶¶19-21. The lay testimony about the victim's mental issues was sufficient to allow a jury to determine that she had a mental deficiency, and the matter was within the common understanding of the jury. Id., ¶¶21, 23.

¶43 Thus, where the issue is within the common understanding of a jury, as opposed to technical or esoteric, and when lay testimony speaks to the mental illness, expert testimony, though probative, may not be required. Id., ¶¶20, 23. This is not to say that expert testimony is never required in the responsibility phase of a trial; however, there are instances in which lay testimony will be enough to satisfy the defendant's burden of proof.

¶44 In the present case, it is at least conceivable that Magett could have carried his burden with lay testimony. For example, he could have had relatives or people who spent substantial amounts of time with him testify that he had lapses in consciousness in which he seemed unable to appreciate what he was doing and could not remember the episodes afterward. Whether expert testimony is required in a given case is a discretionary decision left to the circuit court. See State v. Kandutsch, 2011 WI 78, ¶23, 336 Wis. 2d 478, 799 N.W.2d 865; cf. State v. Pittman, 174 Wis. 2d 255, 267-68, 496 N.W.2d 74 (1993). However, the circuit court must examine the facts, apply the correct legal standard, and reach a rational conclusion. Kandutsch, 336 Wis. 2d 478, ¶23; Pittman, 174 Wis. 2d at 268. A circuit court should also discuss its reasoning for its decision to require expert testimony. See Kandutsch, 336 Wis. 2d 478, ¶23; cf. Pittman, 174 Wis. 2d at 268. In this case, it appears that the circuit court cited Leach for the principle that Magett had to have "a doctor . . . come in" to present expert testimony, a proposition that Leach does not support. There will be instances in which medical testimony is required if the defendant is to have any chance of carrying his burden, but this is not always the case. Therefore, the circuit court erred in declaring that expert testimony was required, but the error was harmless.

¶45 Magett was found guilty in a criminal trial. His NGI defense was to be presented in a second phase of the trial at which he had the burden of proof. The law on NGI procedure is

26

statutory, not constitutional. An error related to statutory procedure is more likely to be harmless when there is strong evidence to support the outcome and when the error does not affect a constitutional right. Martindale, 246 Wis. 2d 67, ¶32.

¶46 Although expert testimony is not required, the defendant must present evidence to allow the jury "to make the affirmative determination of mental disease or defect." Leach, 124 Wis. 2d at 666. In Leach, the defendant claimed that, among other things, evidence of his "peculiar look" prior to committing the crime and evidence of a head injury provided sufficient evidence to send the question of mental disease or defect to the jury. Id. at 665-67. The defendant's psychiatrist and a psychologist testified that they could not determine whether the defendant had a mental disease or defect. Id. at 665. The court determined that a "strange look" does not have "any probative value of mental state or condition." Id. at 667. In addition, the defendant's inability to remember certain details was insufficient to demonstrate mental disease or defect because "[e]pisodic amnesia, the inability to remember committing a crime, is not evidence of mental disease or mental

27

defect."[15]  Id. at 657 n.2, 667.  After the defendant presented his evidence in the responsibility phase of the Leach trial, the court properly granted dismissal in favor of the state on the issue of mental disease or defect because no reasonable juror could conclude that he had a mental disease or defect or "that he lacked substantial capacity to appreciate the wrongfulness of his conduct."  Id. at 652, 667.

¶47 Although an NGI defense does not require expert testimony, it is highly unlikely that a defendant's own testimony, standing alone, will be sufficient to satisfy the

---

[15] "Amnesia is most clearly and simply defined as 'loss of memory.'  It is an inability to recall events known to have occurred within the presence of the patient or events of which the patient would have knowledge, but for the amnesia." Jonathan M. Purver, Annotation, Amnesia as Affecting Capacity to Commit Crime or Stand Trial, 46 A.L.R.3d 544, 550 (1972). Episodic amnesia occurs when a defendant "cannot remember a criminal act subsequent to its commission" and is often associated with overconsumption of alcohol.  Chad J. Layton, Comment, No More Excuses: Closing the Door on the Voluntary Intoxication Defense, 30 J. Marshall L. Rev. 535, 558 (1997) (citing Jackson v. State, 253 S.E.2d 874, 876 (Ga. Ct. App. 1979)).  The aversion to considering episodic amnesia as evidence of mental disease or defect appears well-founded because defendants may easily pretend to have amnesia.  See James E. Tysse & Thomas L. Hafemeister, Amnesia and the Determination of Competency to Stand Trial, 25 Dev. Mental Health L. 65, 67 (2006) (footnote omitted) ("Amnesia is complex and varied, but because amnesia is relatively easily feigned and can be advantageous to the person claiming amnesia, it is likely that many amnesia claims are fabricated.").

burden of proof.[16] <u>Leach</u> is particularly informative here because of the factual similarities to the present case. Like the defendant in <u>Leach</u>, Magett claims that his loss of memory is evidence of mental disease or defect. <u>Leach</u> is very clear that such a momentary lapse in memory does not evince mental disease or defect. <u>Id.</u> at 667. Perhaps recognizing that <u>Leach</u> presents a formidable obstacle to his defense, Magett altered his argument slightly. In his brief to this court, Magett claimed that it was not merely a loss of memory, but also a loss of consciousness.

¶48 We understand Magett's argument to be that a loss of consciousness means that Magett was unaware of the incident <u>as it was occurring</u>——that he never consciously experienced it. Therefore, he does not remember it, and in his state of unconsciousness, he did not have substantial capacity to appreciate the wrongfulness of his actions or to conform his conduct to the law. Arguably, if he were experiencing only episodic amnesia, Magett could have been conscious and could have had substantial capacity to understand the wrongfulness of his conduct and to conform his behavior to the law but would not

---

[16] <u>See</u> 1 Wayne R. LaFave, <u>Substantive Criminal Law</u> § 8.2(c), at 588 (2d ed. 2003) (footnote omitted) ("Lay testimony is unlikely to be sufficient either in effectively presenting an insanity defense or in rebutting such a defense."). Thus, lay witnesses may testify, but "a persuasive case is unlikely to be made on lay testimony alone." <u>Id.</u>, § 8.3(b), at 603 (footnote omitted) (internal quotation marks omitted). This is even more true when the defendant's testimony is the only defense evidence.

remember it. The problem is that Magett's testimony for either unconsciousness or episodic amnesia would be the same——that he did not remember the incident. Based on that testimony, there would be a chance that Magett's inability to remember was due to lack of consciousness and a roughly equal chance it was due to episodic amnesia. Thus, Magett cannot prove his own unconsciousness by his testimony alone. To allow the jury to deliberate on that issue based only on Magett's testimony would be akin to asking the members of the jury to flip a coin. There must be more for the jury to consider.

¶49 Similar to the defendant in Leach, Magett claims that a look in his eyes revealed a mental disease or defect. While the eyes may be windows to the soul,[17] their transparency does not accurately reveal a person's mental well-being. Thus, Magett's change in visage, even if it were visible on the video, is not probative evidence of his mental health. Even if the court had ruled that expert testimony was not necessary for Magett to carry his burden, there is little doubt that the court would have determined Magett's evidence to be insufficient to prove mental disease or defect as a matter of law, and thus the outcome would not have been different.

---

[17] The idea that the eyes are windows to the soul is attributed to Cicero. See Alexis Tadié, Sterne's Whimsical Theatres of Language: Orality, Gesture, Literacy 50 (2003); Cicero, Cicero's Tusculan Disputations 35 (Andrew P. Peabody trans., 1886). Cicero was a "Roman statesman, orator, essayist, and letter writer." "Cicero, Marcus Tullius (106-43 B.C.)," in The Cambridge Dictionary of Philosophy 143, 143 (Robert Audi ed., 2d ed. 1999).

¶50 Magett's burden at the responsibility phase of the trial was to produce enough evidence to prove—by the greater weight of the credible evidence—that he had a mental disease or defect and that, as a result, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. From the discussion between the judge and defense counsel, it is clear that Magett did not have enough evidence to carry his burden. Moreover, the court knew that the State had substantial evidence that Magett did not have a mental disease or defect and did not lack substantial capacity to control his conduct.

¶51 The voluminous evidence against Magett is relevant to a harmless error analysis. Prior to missing any meals, Magett wrote the warden threatening that someone would get hurt if Magett did not get the medical treatment that he wanted. The letter demonstrates that Magett was thinking about hurting someone before the incident. Magett prepared for the incident by spreading cream on the floor and standing on his mattress to give himself the upper hand in the fight. Perhaps most detrimental to Magett's NGI plea is Dr. Lewis's determination that "there is no basis for concluding that [Magett] was unable to appreciate the wrongfulness of his acts nor that he was unable to conform his behavior to the requirements of the law." The court knew that Dr. Lewis was prepared to testify for the State.

¶52 Magett is essentially claiming that he consciously prepared for an altercation but was not conscious for the few

31

seconds during which he committed the criminal act of battery by a prisoner. He claims to remember an officer hurting his wrist and choking him; he claims to remember officers hitting him in the testicles; he clearly remembers swinging at the officers. Yet his powers of recollection fail him for the instant during which he struck Officer Caya. Magett clings to the notion of a fortuitous blackout as proof of mental disease or defect. Even if a court were to accept the claim of a blackout, Magett did not have enough evidence to carry his burden. Testimony that he was unconscious because he did not remember the incident is not enough to prove mental disease or defect by the greater weight of the credible evidence as a matter of law. Therefore, we conclude that the circuit court would have dismissed Magett's mental disease or defect defense even if he had been permitted to present all his testimony in the responsibility phase of the trial.

### C. A Defendant's Competency to Testify in the Responsibility Phase of a Bifurcated Trial

¶53 Magett also argues that the circuit court erred when it determined that Magett was not competent to testify to his own mental health. Although the court said that Magett was not competent to testify, it seems more likely that the court meant to say that Magett was not qualified to testify to more than a description of his mental condition——that he was not qualified to give an expert opinion that he had a mental disease or defect. If the circuit court held such a view, it would relate back to the court's belief that Magett was required to present

32

expert testimony.  The court stated, "Your client's not competent to testify as to whether or not he lacks substantial capacity to appreciate the wrongfulness of his conduct . . . . He doesn't have the expertise to say that."

¶54 The value and credibility of Magett's projected testimony was highly suspect, but he was "competent" to give that testimony and should not have been precluded from testifying in the responsibility phase of the trial, if at all, unless and until his testimony entered into the realm of expert opinion.

¶55 Stated differently, "Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as otherwise provided in these rules."  Wis. Stat. § 906.01. However, the Judicial Council, which presented this rule to the Supreme Court in 1973, observed in a note that judges may determine sufficiency and juries retain their role of assessing the weight and credibility of the evidence.  Wisconsin Rules of Evidence, 59 Wis. 2d Ri, R157-58 (1973).

¶56 Because there is no exception in Wis. Stat. § 906.01 for defendants who have entered an NGI plea,[18] Magett was competent to testify.  This does not mean, however, that his testimony alone was "sufficient" to raise a question for the jury.  As the Judicial Council Committee noted, judges retain the ability to assess sufficiency of evidence.  Id.

---

[18] "[P]roof of mental deficiency ordinarily has the effect of reducing the weight to be given to testimony rather than keeping the witness off the stand."  Kenneth S. Broun, 1 McCormick on Evidence § 62 (7th ed. 2013).

33

¶57 It also does not mean that Magett would have had no limits on what he could say.

¶58 In 2008 at the time of Magett's trial, Wis. Stat. § 907.01 provided that:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

When the rule was adopted as part of the rules of evidence, the Judicial Council Committee's Note asserted that "the rule is applicable when the witness is not testifying as an expert. The rule does not allow the lay witness to testify when the subject of his testimony requires expertise." Wisconsin Rules of Evidence, 59 Wis. 2d at R205 (emphasis added).

¶59 A few months after the new rules took effect, this court decided Simpson v. State, 62 Wis. 2d 605, 609, 215 N.W.2d 435 (1974), in which it said:

> The general rule in Wisconsin is that the admission of opinion evidence rests largely in the discretion of the trial court. York v. State, [45 Wis. 2d 550, 559, 173 N.W.2d 693 (1970)]. The opinion testimony of lay witnesses has been admitted in evidence on many subjects. . . . However, the fact that lay witnesses' opinion testimony on the issue of insanity has been sanctioned, does not mean that these cases stand for the proposition that a lay witness categorically has the right to give opinion testimony on the issue of insanity.

¶60 A defendant who gives a lay opinion as to his own——presumably, temporary——insanity at the time of his crime is not

34

likely to be very credible unless he is supported by other lay and especially expert witnesses. The defendant has the burden of proof, he is subject to cross-examination, and his testimony may be rebutted by the state's witnesses, including the state's experts. Thus, there should normally be little concern about a defendant's opinion that he has a mental disease or defect and lacks the substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. Nonetheless, no "lay witness categorically has the right to give opinion testimony on the issue of insanity." Simpson, 62 Wis. 2d at 609 (emphasis added).

¶61 In this case, even if the circuit court had ruled that Magett was competent to testify and Magett had opined that he was afflicted with a mental disease or defect temporarily when he committed the crime, the circuit court would have been justified in dismissing Magett's mental disease or defect defense because Magett did not have sufficient evidence for a reasonable jury to conclude that he had a mental disease or defect. Therefore, the court's errors in requiring Magett to produce medical testimony and in determining that Magett was not competent to testify did not affect Magett's substantive rights under the facts of this case. The circuit court's errors were harmless.

### D. The Timing of the Dismissal

¶62 At the conclusion of the guilt phase but before the responsibility phase, the circuit court decided "to direct verdict for the State." The court made this decision before the

35

defendant was able to introduce any evidence in the responsibility phase of the trial because the court determined that the evidence, which the judge had seen during the guilt phase, was insufficient to prove mental disease or defect as a matter of law.  Magett contends not only that the directed verdict was improper but also that——because of the timing——it was not a "directed verdict" at all.

¶63 Wisconsin Stat. § 805.14(3)-(4) provide for two possible motions challenging the sufficiency of evidence before a verdict: (3) a motion to dismiss at the close of plaintiff's evidence,[19] and (4) a motion for directed verdict or dismissal at the close of all evidence.[20]  Under subsec. (3), the proper time to move for dismissal on grounds of insufficiency of the evidence is at "the close of plaintiff's evidence in trials to the jury."  Wis. Stat. § 805.14(3).  This is what happened in

---

[19] Wisconsin Stat. § 805.14(3) provides:

> At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence. If the court determines that the defendant is entitled to dismissal, the court shall state with particularity on the record or in its order of dismissal the grounds upon which the dismissal was granted and shall render judgment against the plaintiff.

[20] Wisconsin Stat. § 805.14(4) provides:

> In trials to the jury, at the close of all evidence, any party may challenge the sufficiency of the evidence as a matter of law by moving for directed verdict or dismissal or by moving the court to find as a matter of law upon any claim or defense or upon any element or ground thereof.

36

Leach——Leach presented all his evidence in the responsibility phase of the trial——even though the court said that "the court directed a verdict." Leach, 124 Wis. 2d at 652. The circuit court in this case also referred to a "directed verdict" even though a directed verdict under subsec. (4) is to be entered only "at the close of all evidence." Wis. Stat. § 805.14(4) (emphasis added).

¶64 Magett argues that the circuit court's action was not a directed verdict but, rather, more like a summary judgment under Wis. Stat. § 802.08. However, that statute requires the moving party to serve the motion for summary judgment 20 days before the hearing, and it is clear that the procedure for summary judgment was not followed in this case. See Wis. Stat. § 802.08.

¶65 Magett raises valid points. A circuit court ordinarily must hear all the evidence of the party against whom a dismissal motion is directed before dismissing a matter for insufficient evidence. Technically, a circuit court must hear "all evidence" before directing a verdict. See Wis. Stat. § 805.14(4).[21] However, the unusual posture of this case, which allowed the circuit court to assess all the defendant's NGI evidence before the commencement of the responsibility phase, places the circuit court's action in legal liminality——somewhere

---

[21] Allowing the defendant an opportunity to offer all his evidence ensures that any dismissal or directed verdict is based on full consideration of the defendant's position, conforms to Wis. Stat. § 805.14(1) and (3) or (4), and reduces the procedural grounds for appeal.

between a proper and improper grant of a motion to dismiss at the close of the "plaintiff's" evidence. Under the statute, a court may dismiss if "considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." Wis. Stat. § 805.14(1). Here, the circuit court was able to consider all credible evidence, and if it were not for the timing, the dismissal unquestionably would have been proper. In short, it was not clearly wrong to conclude that Magett had insufficient credible evidence. Whether the timing of the dismissal was an error is another matter. Because any error in the timing was harmless, however, we note only that it is preferable, fairer, and more judicious to allow a defendant to put on his evidence in the responsibility phase before dismissing the NGI defense.

¶66 Even if the dismissal or "directed verdict" was premature, we confidently conclude that the timing of the dismissal did not affect the outcome of the case. As discussed above, Magett's evidence was insufficient to prove that he had a mental disease or defect as a matter of law. Therefore, assuming that the circuit court's dismissal was erroneously premature, the error was harmless.

## IV. CONCLUSION

¶67 We reach the following conclusions.

¶68 First, as a general rule, a defendant is not required to present expert testimony to prove the elements of his NGI defense. Leach, 124 Wis. 2d at 666. Ordinarily, the defendant

38

will offer expert testimony. He may also offer testimony by lay witnesses as well as his own testimony. As a practical matter, a defendant should offer evidence to supplement his own testimony because a defendant who testifies in the responsibility phase of his trial without corroboration is likely to be viewed as self-serving inasmuch as the purpose of his defense is to escape responsibility for his already established criminal conduct. In only an exceptional case with extraordinary facts may a defendant carry his burden in the responsibility phase of a criminal trial by relying solely on his own testimony.

¶69 Second, a defendant is competent to testify as to his mental condition in the responsibility phase of a criminal trial. However, a lay defendant does not have an unlimited, categorical right to give opinion testimony on the issue of mental disease or defect.

¶70 Third, a court should normally permit a defendant to offer his evidence in the responsibility phase of a trial before the court rules on his NGI defense. By allowing the defendant an opportunity to offer all his evidence, the court ensures that any dismissal or directed verdict is informed by full consideration of the defendant's position, conforms to Wis. Stat. § 805.14(1), and (3) or (4), and reduces the procedural grounds for appeal. There will not be many cases where the defendant's position is so bereft of merit that the court can conclude that there is no jury question as a matter of law before the defendant presents his evidence.

¶71 Fourth, we conclude here that the evidence to support the defendant's NGI defense was insufficient as a matter of law, so that any errors by the circuit court in refusing to allow the trial to proceed to the responsibility phase were harmless.  We conclude that no reasonable jury would have determined that the defendant had a mental disease or defect that caused him to lack substantial capacity to understand the wrongfulness of his conduct or to conform his conduct to the requirements of law.

¶72 Accordingly, we affirm the court of appeals' decision to uphold the defendant's conviction.

*By the Court.*—The decision of the court of appeals is affirmed.

¶73 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* The majority opinion says it is doing one thing but does another.

¶74 First, the majority opinion professes to use the standard in State v. Leach, 124 Wis. 2d 648, 666, 370 N.W.2d 240 (1985), regarding expert testimony for the responsibility phase of a bifurcated trial but instead converts it into a vague and unmanageable standard of its own fashioning. Whereas Leach clarifies that no expert testimony is needed and lay testimony alone is sufficient to prove mental disease or defect, the majority opinion declares, without citation to any authority, that "[i]n only an exceptional case with extraordinary facts may a defendant carry his burden in the responsibility phase of a criminal trial by relying solely on his own testimony." Majority op., ¶7. The majority opinion does not explain what makes cases "exceptional" or facts "extraordinary."

¶75 Second, the majority opinion professes to merely address the "timing" of the directed verdict, when in fact it addresses the ability of a defendant to offer any evidence, specifically his own testimony, to show mental disease or defect. In the instant case, the circuit court heard no testimony on the defendant's alleged mental disease or defect. The entire second phase of the trial was precluded by the circuit court's sua sponte moving and granting its own motion for a directed verdict in favor of the State. Defense counsel did not appear to understand that the circuit court was

1

preparing to grant a directed verdict on its own motion in favor of the State.

¶76 Perhaps the defendant would have been unable to meet his burden to prove that he was not guilty by reason of mental disease or defect, but how could the circuit court know without giving the defense attorney the opportunity for a full and proper proffer? Perhaps the defendant would not have persuaded the jury, but that is not the appropriate test for precluding the defendant's testimony.

¶77 Finally, the majority opinion concludes that deprivation of a defendant's right to present evidence and his own testimony is not preferable, not fair, and not judicious. The majority opinion proclaims "that it is preferable, fairer, and more judicious to allow a defendant to put on his evidence in the responsibility phase before dismissing the NGI defense." Majority op., ¶65. Curiously, given the choice, the majority opinion opts to endorse the less preferable, less fair, and less judicious procedure here.

¶78 The majority opinion holds that the errors that led to the circuit court's blanket exclusion of the defendant's testimony through a directed verdict prior to the presentation of the defendant's evidence were harmless and "did not affect [the defendant's] substantive rights under the facts of this case." Majority op., ¶61. In so doing, the majority opinion fails to confront the true nature of a circuit court's error in preemptively preventing a defendant from testifying at the responsibility phase of a bifurcated trial.

I

¶79 Contrary to applying <u>Leach</u>, as it professes to do, the majority opinion adds and invents new components to the standard announced in <u>Leach</u>, making it almost impossible for a defendant to make a sufficient proffer absent expert testimony.

¶80 The holding in <u>Leach</u> is clear that lay testimony alone is sufficient to show mental disease or defect: "A favorable expert opinion is not an indispensable prerequisite to a finding of mental disease or defect." <u>Leach</u>, 124 Wis. 2d at 666.

¶81 The majority opinion first properly states the law that there is no requirement for expert testimony in mental disease or defect cases, citing <u>State v. Perkins</u>, 2004 WI App 213, 277 Wis. 2d 243, 689 N.W.2d 684:

> [W]here the issue is within the common understanding of a jury, as opposed to technical or esoteric, and when lay testimony speaks to the mental illness, expert testimony, though probative, may not be required.

Majority op., ¶43.

¶82 Indeed, <u>Perkins</u> asserts that "requiring expert testimony . . . represents an <u>extraordinary</u> step, one to be taken only when unusually complex or esoteric issues are before the jury." <u>Perkins</u>, 277 Wis. 2d 243, ¶16 (emphasis added, internal quotation marks & quoted source omitted).

¶83 The majority opinion turns <u>Leach</u> and <u>Perkins</u> on their heads, stating that the requirement of expert testimony is the norm, not the exception:

> [I]n only an exceptional case with extraordinary facts may a defendant carry his burden in the responsibility

3

phase of a criminal trial by relying solely on his own testimony.

Majority op., ¶7.

¶84 For the proposition that expert testimony is generally required for the responsibility phase of trial, the majority opinion offers no citation. Perkins and Leach stand for the contrary proposition of law.

¶85 The majority opinion asserts that instances where expert testimony is not required are "exceptional" or "extraordinary," but Leach and Perkins recognize that they are the baseline rule. No expert testimony is necessary for a jury to make a determination of mental disease or defect under the statutes[1] or under Leach.

¶86 The majority opinion provides no guidance as to when expert testimony is required or whether it was required in the instant case to avoid a directed verdict. I would follow Leach and Perkins and not switch to the vague and unmanageable standard the majority opinion fashions.

---

[1] Wisconsin Stat. § 971.165 governs procedures for defendants who plead not guilty by reason of mental disease or defect and does not require any medical or expert testimony.

The jury instruction for mental disease or defect, which was never given in the instant case, states the difference between the legal standard and the standard used by medical professionals for mental disease or defect:

> The term "mental disease or defect" identifies a legal standard that may not exactly match the medical terms used by mental health professionals. You are not bound by medical labels, definitions, or conclusion as to what is or is not a mental disease or defect to which the witnesses may have referred.

Wis JI——Criminal 605 at 2.

4

## II

¶87 The majority opinion phrases the issue of the directed verdict granted by the circuit court prior to any testimony as an issue of "timing."[2] Yet denying the right of the defendant to testify is not an issue of mere "timing." Rather, it implicates the fundamental principle that the defendant should be allowed to put on evidence, especially his own testimony.[3]

¶88 In the instant case, the circuit court <u>sua sponte</u> directed the verdict in favor of the State "before the defendant was able to introduce <u>any</u> evidence in the responsibility phase of the trial . . . ." Majority op., ¶62 (emphasis added).

¶89 The majority opinion justifies this exclusion by stating that the facts of the instant case "allowed the circuit court to assess all the defendant's NGI evidence before the commencement of the responsibility phase . . . ." Majority op., ¶65. Yet, the circuit court had no way of knowing exactly what the defendant would have testified to in the second phase of trial. When asked what evidence the defendant would put on, defense counsel stated "the evidence I have is my client's testimony." Nevertheless, we do not know what a jury might have concluded after hearing the defendant in the responsibility phase of trial.

---

[2] <u>See</u> majority op., ¶62.

[3] <u>Cf.</u> "A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." <u>Rock v. Arkansas</u>, 483 U.S. 44, 52 (1987); Wis. Const. Art. I, § 7.

¶90 The majority opinion even speaks out against the anomalous and unfair procedure created by the circuit court's directed verdict in the instant case prior to hearing any testimony by either the defendant or the State. See majority op., ¶65. Nevertheless the majority opinion affirms the circuit court's procedure and result.

III

¶91 I agree with the majority opinion that the circuit court erred in deciding that the defendant was incompetent to testify. Majority op., ¶¶53-54. I cannot agree, however, that the circuit court's directed verdict without hearing the defendant's testimony constituted harmless error. Indeed, I am unconvinced that harmless-error analysis is the appropriate test.

¶92 Once a statutory right is implicated, procedural due process applies, and the defendant is entitled to proper notice and hearing congruent to the defendant's interest, the state's interest, and the value of the additional safeguard. See Mathews v. Eldridge, 424 U.S. 319 (1976).

¶93 The majority opinion simply assumes that a harmless-error analysis applies in the instant case after noting that the circuit court committed several errors.[4] Due process may require a different test when a defendant is prevented from testifying outright. The majority opinion does not consider whether the error to exclude totally a defendant's testimony at the

---

[4] Majority op., ¶29.

6

responsibility phase of trial should be subject to harmless-error analysis at all.

¶94  The issue of whether there was error and whether the harmless-error analysis applies when a circuit court entirely excludes a defendant's testimony on the grounds of competency is before this court in the context of a criminal trial in State v. Nelson, 2014 WI ___, ___ Wis. 2d ___, ___N.W.2d ___.  The majority opinion in Nelson asserts that although error is assumed when a criminal defendant is barred from testifying, such error is reviewed under a harmless-error analysis.[5]  As I note in my dissent in Nelson,[6] such a standard is inappropriate for evaluating the error in the present case that so strongly impugns the fairness of the proceeding and whose effect on the trial cannot be quantified.

IV

¶95  I write additionally to comment on the majority opinion's place in what appears to be a troubling development in several of this court's recent criminal cases: The court assumes, without deciding, that error occurred and then concludes that the assumed error was harmless.  See, e.g., State v. Nelson, 2014 WI 70, ___ Wis. 2d ___, ___N.W.2d ___ (assuming error in barring the defendant from testifying, but concluding that a harmless error test applies and that the error in excluding the testimony was harmless); State v. Rocha-Mayo, 2014

---

[5] State v. Nelson, 2014 WI 70, ¶23, ___ Wis. 2d ___, ___N.W.2d ___.

[6] Nelson, 2014 WI 70, ¶72 (Abrahamson, C.J., dissenting).

7

WI 57, ___ Wis. 2d ___, ___N.W.2d ___ (assuming error in admitting evidence of a preliminary breath test and in permitting faulty jury instruction, but holding that any error is harmless); State v. Deadwiller, 2013 WI 75, ¶41, 350 Wis. 2d 138, 834 N.W.2d 362 (assuming error in admitting potential confrontation clause violation but holding that any violation was harmless).

¶96 By repeatedly assuming error and concluding that the error is harmless, this court fails to determine whether any systemic problems exist and fails to provide adequate guidance to litigants, the circuit courts, and the court of appeals regarding important day-to-day practices and procedures.

¶97 For the foregoing reasons, I dissent.

¶98 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.