# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1424-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |       Plaintiff-Respondent, |
| |   v. |
| | James Elvin Lagrone, |
| |       Defendant-Appellant-Petitioner. |

A REVIEW OF A DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | April 22, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 25, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Richard J. Sankovitz |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | BRADLEY, A. W., J. dissents, joined by ABRAHAMSON, J. |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Kaitlin A. Lamb*, assistant state public defender and oral argument by *Kaitlin A. Lamb*.

For the plaintiff-respondent, the cause was argued by *Katherine D. Lloyd*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1424-CR
(L.C. No. 2011CF1996)

STATE OF WISCONSIN          :       IN SUPREME COURT

**State of Wisconsin,**

        **Plaintiff-Respondent,**

    **v.**

**James Elvin Lagrone,**

        **Defendant-Appellant-Petitioner.**

**FILED**

**APR 22, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Lagrone, No. 2013AP1424-CR, unpublished slip op. (Wis. Ct. App. Apr. 7, 2015), which affirmed the Milwaukee County circuit court's judgment of conviction and order denying defendant James Elvin Lagrone's ("Lagrone") postconviction motion for an evidentiary hearing and a new trial on the question of Lagrone's mental responsibility.[1]

[1] The Honorable Richard J. Sankovitz presided over the most relevant hearings in this case and entered the judgment of conviction. The Honorable Jeffrey A. Wagner entered the order denying postconviction relief.

¶2 Criminal defendants possess a fundamental constitutional right to testify in their own defense. See, e.g., State v. Anthony, 2015 WI 20, ¶¶46, 48, 361 Wis. 2d 116, 860 N.W.2d 10 (citing Rock v. Arkansas, 483 U.S. 44, 49 (1987)). Further, this court has stated that a circuit court "should conduct an on-the-record colloquy to ensure that the defendant is knowingly, intelligently, and voluntarily waiving his or her right to testify." State v. Weed, 2003 WI 85, ¶2, 263 Wis. 2d 434, 666 N.W.2d 485.

¶3 The question before this court is whether, upon a plea of not guilty by reason of mental disease or defect ("NGI") under Wis. Stat. § 971.15 (2013-14),[2] such right-to-testify colloquies are also required at the responsibility phase of the resulting bifurcated trial established by Wis. Stat. § 971.165. See generally State v. Magett, 2014 WI 67, ¶¶33-40, 355 Wis. 2d 617, 850 N.W.2d 42 (discussing nature and history of bifurcated trials resulting from NGI pleas).

¶4 Lagrone does not challenge the plea colloquy that occurred during the guilt phase of his bifurcated NGI proceedings. He does not argue that he was unaware that, by pleading guilty to the criminal charges against him, he was waiving his fundamental right to testify at a criminal trial pertaining to the validity of those charges. Instead, we must analyze Lagrone's opportunity to testify at the responsibility

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

phase of his bifurcated trial.  The circuit court below did not conduct a right-to-testify colloquy with Lagrone during the responsibility phase of his bifurcated trial, and Lagrone argues that because he did not understand that he had a right to testify at that phase, he is entitled to an evidentiary hearing under State v. Garcia, 2010 WI App 26, 323 Wis. 2d 531, 779 N.W.2d 718, so that a court may determine whether he properly waived his right to testify.  Ultimately, determining whether a colloquy is necessary during the responsibility phase of NGI proceedings requires us to determine whether the fundamental right to testify applies at that phase.  The court of appeals below decided that resolution of this "issue of first impression" was unnecessary because, it reasoned, the harmless error doctrine applied and any error by the circuit court was harmless.  See State v. Lagrone, No. 2013AP1424-CR, unpublished slip op., ¶¶13, 17, 19 (Wis. Ct. App. Apr. 7, 2015).

¶5  We conclude that, although a better practice, a circuit court is not required to conduct a right-to-testify colloquy at the responsibility phase of a bifurcated trial resulting from a plea of not guilty by reason of mental disease or defect.[3]  Further, Lagrone is not entitled to an evidentiary

---

[3] As we will explain, nothing in this opinion affects our instruction in State v. Weed that circuit courts conduct an on-the-record colloquy at a criminal trial, or at the guilt phase of bifurcated NGI proceedings, to ensure that the defendant is knowingly, intelligently, and voluntarily waiving his or her fundamental right to testify.  State v. Weed, 2003 WI 85, ¶2, 263 Wis. 2d 434, 666 N.W.2d 485.

hearing because he has not made the requisite showing for such a hearing. Accordingly, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND

¶6 On April 30, 2011, at about 10:00 p.m., Lagrone arrived at the Milwaukee home of his ex-girlfriend, B.M.J.[4] Lagrone wanted to enter B.M.J.'s home, but she refused to let him in. Lagrone nevertheless forced his way into the home and then "proceeded to 'humiliate'" B.M.J., abusing her both physically and sexually, until about 1:00 p.m. the following day. This violent episode ceased only when an apparent acquaintance of B.M.J. arrived at the home to check on her because she was not answering his phone calls. The acquaintance observed that the door to the home was wide open and heard screaming. He entered the home and saw B.M.J. lying on the floor; Lagrone was on top of her with his hands around her neck. The acquaintance called 911 and Lagrone fled in B.M.J.'s car. Lagrone turned himself in later that day.

## II. PROCEDURAL BACKGROUND

¶7 On May 5, 2011, a criminal complaint was filed against Lagrone charging him with: (1) strangulation and suffocation, contrary to Wis. Stat. § 940.235(1) (2011-12); (2) false imprisonment, contrary to Wis. Stat. § 940.30 (2011-12); (3)

---

[4] The facts of this case are not material to the outcome of this appeal and are taken from the criminal complaint filed against Lagrone.

second-degree sexual assault (force or violence), contrary to Wis. Stat. § 940.225(2)(a) (2011-12); (4) recklessly endangering safety (first degree), contrary to Wis. Stat. § 941.30(1) (2011-12); and (5) operating a motor vehicle without owner's consent, contrary to Wis. Stat. § 943.23(3) (2011-12).  Each count carried the domestic abuse modifier.  See Wis. Stat. § 968.075(1)(a) (2011-12).

¶8  On May 13, 2011, Lagrone's attorney informed the Milwaukee County circuit court[5] that she had reason to doubt Lagrone's competency.  The attorney asked the court to order a competency evaluation of Lagrone.  The court granted the request.  On May 25, 2011, Dr. Robert Rawski filed a report in which he provided his belief to a reasonable degree of medical certainty that Lagrone suffered from paranoid schizophrenia but was currently competent to stand trial.

¶9  On June 9, 2011, a preliminary hearing was held and Lagrone pleaded not guilty and NGI.  On June 21, 2011, the court[6] ordered that Lagrone be examined for purposes of his NGI plea. On July 22, 2011, Dr. John Pankiewicz filed a report which stated his belief to a reasonable degree of medical certainty that Lagrone was suffering from schizophrenia on the date of his offense.  However, the report also stated that Dr. Pankiewicz could not support Lagrone's NGI plea.[7]  On October 31, 2011, at a

---

[5] The Honorable Mary Kuhnmuench presided.

[6] The Honorable Kevin Martens presided.

[7] The report stated in part:

(continued)

5

final pretrial conference,[8] Lagrone's attorney distributed a report authored by Dr. Anthony Jurek and dated October 24, 2011.[9] The report stated Dr. Jurek's opinion that Lagrone was suffering from paranoid schizophrenia on the date of his offense and that "the diagnosis of Paranoid Schizophrenia impaired the subject's capacity to understand the wrongfulness of his behavior and rendered him unable to conform his behavior to the requirements of law." On March 5, 2012, at a final pretrial conference, Lagrone's attorney requested an additional competency evaluation because she had reason to doubt Lagrone's competency.[10] The court granted the request. On March 14, 2012, Dr. Deborah L. Collins filed a report in which she provided her belief to a reasonable degree of medical certainty that Lagrone was presently competent to proceed. The report "urge[d] court

Overall, I do not believe that there was sufficient evidence to find to a reasonable degree of medical certainty that the predominant factor in Mr. Lagrone's offense related behavior was a consequence of his mental illness. I therefore could not find to a reasonable degree of medical certainty that he lacked substantial capacity to understand the wrongfulness of his act or conform his behavior to the requirements of the law . . . .

[8] The Honorable Richard J. Sankovitz presided.

[9] It is not clear from the record if this report was ever actually filed with the circuit court. The report itself is in the record.

[10] The attorney explained that when she had met recently with Lagrone, "Lagrone was unable to function. He was bringing up inappropriate religious things in the middle of our discussions. He was shaking."

officers to remain sensitive in the event of any significant changes in [Lagrone's] overall mental status and/or compliance with psychiatric treatment," as "such changes [might] signal fluctuations in his competency and warrant his re-examination."

¶10 On March 16, 2012, a plea hearing was held at which the parties informed the court that they had negotiated an agreement according to which Lagrone would plead guilty to all five criminal counts against him but would proceed to try the mental responsibility phase of the bifurcated trial. If Lagrone's NGI plea were rejected, the State agreed to recommend a sentence of 15 years of initial confinement and seven years of extended supervision.

¶11 Lagrone then pleaded guilty to all five criminal counts against him. The court confirmed that Lagrone had reviewed or signed certain documents, including a plea questionnaire and waiver of rights form and addendum, correspondence between the State and Lagrone's attorney, a penalty chart, and jury instructions.[11] The court also confirmed that Lagrone understood his rights as listed in certain of the documents and the fact that he was waiving some of the rights by pleading guilty, but that he was not waiving his right to the

---

[11] Some of these documents, such as the plea questionnaire form, feature handwritten notes in the margins. For example, on the plea questionnaire form under the heading "Constitutional Rights," and next to the checked box reading "I give up my right to testify and present evidence at trial," the following is handwritten: "True for Phase I, not for II."

second phase of the bifurcated trial.[12] The court asked Lagrone's attorney whether she was "satisfied Mr. Lagrone understands all the rights that he gives up about pleading guilty in phase one"; Lagrone's attorney indicated that she was satisfied.

¶12 On March 23, 2012, and April 27, 2012, the court conducted the responsibility phase of the bifurcated trial. Testimony was offered at this phase by: (1) the police officer

---

[12] A portion of the exchange proceeded as follows:

THE COURT: Do you see all the rights listed in these documents?

THE DEFENDANT: Yes.

THE COURT: Do you understand them?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty in the first phase of this case, you give up all those rights, like the right to have a trial on whether you committed these crimes and the right to force the State to prove you committed these crimes and the right to present witnesses about whether you committed the crimes, all those rights, did you understand all those and understand that you're giving them up?

THE DEFENDANT: Yes.

THE COURT: Now, there's an important right that you did not give up by pleading guilty. That's the right to have the second part of the trial. That's the right to have the court decide whether you should be held responsible; do you understand that?

THE DEFENDANT: Yes.

to whom Lagrone had first spoken when Lagrone had turned himself in; (2) a social worker who had interacted with Lagrone on several occasions; (3) Dr. Jurek, who supported Lagrone's NGI plea; and (4) Dr. Pankiewicz, who did not support Lagrone's NGI plea. On April 27, 2012, the court found that Lagrone had "not satisfied the court on Phase Two of this two-phase trial" and that "he should be held responsible for the crimes for which he was convicted in the first phase." The court adjudged Lagrone guilty of the five counts against him and entered a judgment of conviction.

¶13 At no time during the responsibility phase did the court inform Lagrone that he had a right to testify or ask Lagrone whether he was waiving his right to testify.[13] On

---

[13] At the close of evidence, however, the following conversation took place between the court, Lagrone, and Lagrone's attorney:

> THE COURT: Ms. Erickson, does Mr. Lagrone want to present any additional evidence?
>
> MS. ERICKSON: No.
>
> THE COURT: Okay. Mr. Lagrone, did you hear what Ms. Erickson just told me?
>
> THE DEFENDANT: (Nods head.)
>
> THE COURT: You have to say "yes" or "no."
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand what she told me?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you agree with her?

(continued)

May 25, 2012, the court sentenced Lagrone to a cumulative six years of initial confinement and six years of extended supervision.

¶14 On May 17, 2013, Lagrone filed a postconviction motion. According to the motion, "At no point during the court trial did the court conduct an on-the-record colloquy regarding Mr. Lagrone's right to testify. . . . Lagrone asserts that he did not understand that he had a right to testify at the mental responsibility phase." Lagrone argued that "the fundamental right to testify . . . is applicable to the mental responsibility phase" of a bifurcated trial resulting from an NGI plea, and requested an evidentiary hearing "at which the State carries the burden to show by clear and convincing evidence that the defendant's waiver of the right to testify at trial was knowing and voluntary." Lagrone also requested an order granting a new trial on the responsibility phase. He did not provide information regarding the content of his proposed testimony.

¶15 On May 29, 2013, the circuit court[14] issued a decision and order denying Lagrone's motion. The court concluded:

> [Lagrone] does not have a fundamental constitutional right to testify during the mental responsibility phase . . . . In the absence of either a fundamental right or a statutory duty on the part of the court to conduct a colloquy concerning the right to testify in

---

THE DEFENDANT: Yes.

[14] The Honorable Jeffrey A. Wagner presided.

a Phase II proceeding, the court declines to hold an evidentiary hearing, particularly where the defendant has not set forth anything in his motion of what his testimony would have been.

¶16 On June 17, 2013, Lagrone filed a notice of appeal. On April 7, 2015, the court of appeals affirmed the decision of the circuit court in an unpublished decision. Lagrone, unpublished slip op., ¶19. The court of appeals acknowledged that the question of whether circuit courts are required to hold a right-to-testify colloquy at the responsibility phase of a bifurcated trial resulting from an NGI plea was an "issue of first impression," but resolved the case on other grounds. Id., ¶13. Relying on State v. Nelson, which held that "the denial of a defendant's right to testify is subject to harmless error review," State v. Nelson, 2014 WI 70, ¶43, 355 Wis. 2d 722, 849 N.W.2d 317, the court of appeals concluded that "a trial court's failure to hold an evidentiary hearing following the failure to conduct a colloquy regarding a defendant's right to testify is no different than the direct denial of a defendant's right to testify at trial" and that harmless error review therefore applied. Lagrone, unpublished slip op., ¶¶16-17. The court subsequently determined that any error that had occurred was harmless. Id., ¶19.

¶17 On May 7, 2015, Lagrone filed a petition for review in this court. On September 9, 2015, this court granted the petition.

11

### III.  STANDARD OF REVIEW

¶18  This court "review[s] constitutional questions, both state and federal, de novo."  State v. Schaefer, 2008 WI 25, ¶17, 308 Wis. 2d 279, 746 N.W.2d 457 (citation omitted).

### IV.  ANALYSIS

#### A.  The Fundamental Constitutional Right of Criminal Defendants to Testify in Their Own Defense

¶19  In 1980 we confronted the question of whether criminal defendants possess a constitutional right to testify in their own behalf at a criminal trial.  State v. Albright, 96 Wis. 2d 122, 126-29, 291 N.W.2d 487 (1980), modified, Weed, 263 Wis. 2d 434.  We explained that although the United States Supreme Court had never determined whether a criminal defendant possesses a constitutional right to testify, the right was "part of the due process rights of the defendant protected by the Fourteenth Amendment."  Albright, 96 Wis. 2d at 128.  We thus concluded that with reference to a criminal trial, wherein the State bears the burden to prove the defendant's guilt beyond a reasonable doubt, "there is a constitutional due process right on the part of the criminal defendant to testify in his own behalf."  Id. at 129.

¶20 We also examined in Albright whether a criminal defendant's right to testify is a "fundamental" constitutional right such that, as with rights ranging from the right to an appeal to the right to the assistance of counsel, only a defendant's personal waiver of the right is an effective waiver.

12

Id. at 129-30 (citations omitted). While recognizing that a criminal defendant's right to testify is "important," we declined to characterize it as fundamental, ultimately concluding, "We perceive no need for courts in post conviction hearings to delve into the processes by which an attorney and his client determine whether the defendant should waive his right to testify." Id. at 130-32. Instead, "counsel, in the absence of the express disapproval of the defendant on the record during the pretrial or trial proceedings, may waive the defendant's right to testify." Id. at 133.

¶21 Less than a decade later, in Rock v. Arkansas, the United States Supreme Court recognized that the United States Constitution guarantees "a defendant in a criminal case . . . the right to take the witness stand and . . . testify in his or her own defense." Rock, 483 U.S. at 49. Although the Court did not isolate any single explicit statement of the right in the federal constitution, and although the Court acknowledged that the right "is a change from the historic common-law view, which was that all parties to litigation, including criminal defendants, were disqualified from testifying because of their interest in the outcome of the trial," id., the Court explained that the right "is essential to due process of law in a fair adversary system" and "has sources in several provisions of the Constitution." Id. at 51 (citing Faretta v. California, 422 U.S. 806, 819, n.15 (1975)).

¶22 First, the Court explained, a criminal defendant's right to testify is a "necessary corollary to the Fifth

13

Amendment's guarantee against compelled testimony." Id. at 52. The Fifth Amendment of the United States Constitution states in part, "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.[15] The Court reasoned that a privilege against self-incrimination is exercised when an accused decides whether to testify; "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." Rock, 483 U.S. at 53 (quoting Harris v. New York, 401 U.S. 222, 230 (1971)).

¶23 Second, a criminal defendant's right to testify is located in the Compulsory Process Clause of the Sixth Amendment of the United States Constitution. Id. at 52. The amendment provides in part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI.[16] "Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense' is a right to testify himself, should he decide it is in his favor to do so." Rock, 483 U.S. at 52 (citation omitted).

---

[15] The Fifth Amendment privilege applies to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

[16] The Sixth Amendment's Compulsory Process Clause applies to the states through the Fourteenth Amendment. Washington v. Texas, 388 U.S. 14, 17-19 (1967).

14

¶24 Finally, "[t]he necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony. . . ." Id. at 51. The Rock Court added in a footnote that "[t]his right reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify." Id. at 51 n.9. The Court cited as examples cases involving probation revocation, parole revocation, and the termination of welfare benefits. Id. (citations omitted).

¶25 After Rock this court revisited Albright and concluded that a criminal defendant's constitutional right to testify in his or her behalf is a fundamental right. Weed, 263 Wis. 2d 434, ¶¶37-39. We further concluded that "a circuit court should conduct a colloquy with the defendant in order to ensure that the defendant is knowingly and voluntarily waiving his or her right to testify," though recognizing that only a minority of jurisdictions required the practice. Id. at ¶¶40-41.

¶26 Most recently, we recognized that the right to testify identified in Rock finds additional support in the Wisconsin Constitution. State v. Denson, 2011 WI 70, ¶¶49-54, 335 Wis. 2d 681, 799 N.W.2d 831. Article I, Section 7 of the Wisconsin Constitution states in part, "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . [and] to have compulsory process to

15

compel the attendance of witnesses in his behalf . . . ." Wis. Const. art. I, § 7. Article I, Section 8 of the Wisconsin Constitution states in part, "No person . . . may be compelled in any criminal case to be a witness against himself or herself." Wis. Const. art. I, § 8(1). Thus the due process, compulsory process, and non-incrimination sources of the federal constitutional right of criminal defendants to testify in their own behalf have analogues in our state constitution.

¶27 Given this history, Lagrone now argues that an on-the-record colloquy regarding waiver of his fundamental right to testify should also be required at the responsibility phase of his bifurcated trial. In order to test the merits of this claim, we must review the nature and purpose of NGI pleas and of the responsibility phase of bifurcated NGI trials.[17]

### B. NGI Pleas and the Responsibility Phase of the Bifurcated Trial Resulting From an NGI Plea

¶28 At the outset, it is critical to understand the essential differences between a plea of not guilty and a plea of not guilty by reason of mental disease or defect. Typically, upon a plea of not guilty, the parties proceed to trial wherein the State bears the burden of securing a unanimous jury verdict

---

[17] We recently had occasion to thoroughly examine the nature and history of both Wisconsin's NGI plea and the bifurcated trial resulting from such a plea. See generally State v. Magett, 2014 WI 67, ¶¶32-40, 355 Wis. 2d 617, 850 N.W.2d 42; State v. Burton, 2013 WI 61, ¶¶42-46, 349 Wis. 2d 1, 832 N.W.2d 611. We do not repeat in full the discussion that occurred in these cases, but instead set out only the principles most germane to the issues before us.

that it has proven each essential element of the offense charged against the criminal defendant beyond a reasonable doubt. See, e.g., Holland v. State, 91 Wis. 2d 134, 138, 280 N.W.2d 88 (1979). A court may not direct a verdict of guilt against a defendant in a criminal case. State v. Peete, 185 Wis. 2d 4, 19, 517 N.W.2d 149 (1994) (citation omitted). After the jury renders a guilty verdict, the circuit court sentences the defendant. See, e.g., In re Eckart, 85 Wis. 681, 681, 56 N.W. 375 (1893).

¶29 If, however, a criminal defendant enters a plea of NGI (without joining it with a plea of not guilty), the defendant thereby "admits that but for lack of mental capacity the defendant committed all the essential elements of the offense charged in the indictment, information or complaint." Wis. Stat. § 971.06(1)(d). "[T]he court will find the defendant guilty of the elements of the crimes, and the NGI plea will be left for trial." State v. Burton, 2013 WI 61, ¶43, 349 Wis. 2d 1, 832 N.W.2d 611. This trial, however, is much different than the criminal trial previously discussed. In this proceeding——which is concerned with the criminal defendant's mental responsibility——the defendant, not the State, bears the burden of establishing mental disease or defect excluding responsibility. See Wis. Stat. § 971.15(3). The burden on the defendant is not "beyond a reasonable doubt," but instead "to a reasonable certainty by the greater weight of the credible evidence." Id. The defendant need not obtain a unanimous jury verdict, but instead only a five-sixths verdict. Magett, 355

17

Wis. 2d 617, ¶39. And, unlike in a criminal trial, "a judge may grant a motion to dismiss the NGI defense or direct a verdict in favor of the state if the defendant cannot produce sufficient evidence to show mental disease or defect." Id.

¶30 Thus, under the posture of the current case, Lagrone has already admitted that but for lack of mental capacity he committed all the essential elements of the criminal offenses charged against him. If not for his NGI plea, Lagrone would have proceeded to sentencing for committing those crimes. With this general background in place, we now proceed to examine in closer detail the nature and purpose of NGI pleas and their concomitant procedures.

¶31 Under Wis. Stat. § 971.15, "Mental responsibility of defendant," "[a] person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." § 971.15(1). An NGI plea is "an affirmative defense which the defendant must establish to a reasonable certainty by the greater weight of the credible evidence." § 971.15(3).

¶32 The affirmative defense of NGI established by Wis. Stat. § 971.15(1) builds upon

> the centuries-long evolution of the collection of interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual for his antisocial deeds. The doctrines of actus reus, mens rea, insanity, mistake, justification, and duress have historically provided

18

the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man.

Powell v. Texas, 392 U.S. 514, 535-36 (1968) (plurality) (emphasis added). We have recognized with regard to Wisconsin's NGI plea that "[w]hether or not there should be criminal responsibility is essentially a moral issue." Steele v. State, 97 Wis. 2d 72, 96, 294 N.W.2d 2 (1980). That is, at the heart of any NGI inquiry is the following question:

> [I]s this person who has been found guilty beyond a reasonable doubt of criminal conduct to be punished or is there to be a different disposition because, in good conscience and public morality, the defendant is a person, because of mental disease or defect, who ought not to be held criminally liable for his or her conduct[?]

State v. Koput, 142 Wis. 2d 370, 389, 418 N.W.2d 804 (1988). Importantly, however, "a criminal defendant's right to an NGI defense is a statutory right that is not guaranteed by either the United States or Wisconsin Constitutions." Magett, 355 Wis. 2d 617, ¶32 (citations omitted).

¶33 Under current statutory procedures, the dual issues of whether a defendant has committed the criminal offense alleged and whether a defendant may be held responsible for committing that offense are determined in separate proceedings. See Wis. Stat. § 971.165; Burton, 349 Wis. 2d 1, ¶¶42-46.[18] The

---

[18] We explained in Burton:

> If the NGI plea is not joined with a plea of not guilty, the plea admits that but for lack of mental capacity the defendant committed all the essential
>
> (continued)

responsibility phase of an NGI trial, in contrast to the so-called "guilt phase," contains "elements of civil procedure" and is "something close to a civil trial." Magett, 355 Wis. 2d 617, ¶¶36, 39-40. Specifically: (1) the burden of proof to establish mental disease or defect, which is on the defendant, is the same as the burden required in civil trials for most issues; (2) a

---

elements of the offenses charged. Then——when there is a substantive basis for finding the crimes charged—— the court will find the defendant guilty of the elements of the crimes, and the NGI plea will be left for trial.

Conversely, if the defendant pleads not guilty in conjunction with an NGI plea, Wis. Stat. § 971.165(1) provides for the bifurcation of the guilt and mental responsibility phases of trial . . . .

Burton, 349 Wis. 2d 1, ¶¶43-44 (citations omitted). Lagrone pleaded guilty to the charges against him but proceeded to trial on the question of his mental responsibility at the time of the offense. It might thus seem inaccurate to refer to the proceedings in this case as "bifurcated"; only one phase was tried. Put differently, because Lagrone did not contest that he committed the offense alleged, there was no need for "a separation of the issues [of whether Lagrone committed the criminal offense alleged and whether Lagrone is mentally responsible for committing the offense alleged] with a sequential order of proof in a continuous trial." Wis. Stat. § 971.165(1)(a).

Nevertheless, as the court of appeals and the parties referred to Lagrone's "bifurcated" criminal proceeding, see, e.g., State v. Lagrone, No. 2013AP1424-CR, unpublished slip op., ¶3 (Wis. Ct. App. Apr. 7, 2015), as the issues of Lagrone's guilt and mental responsibility were indeed determined in sequence, and as the principles enunciated in this case are equally applicable to a bifurcated NGI trial, we will, for simplicity, use the practice of referring to the proceedings at issue as "bifurcated."

20

judge may direct a verdict in favor of the State on the issue of mental responsibility; and (3) the defendant need only obtain a five-sixths jury verdict on the issue of mental responsibility. See id., ¶39 (citations omitted).

¶34  On the other hand, the mental responsibility phase is not "purely civil."  Koput, 142 Wis. 2d at 397.  We have instead characterized the mental responsibility phase as "a special proceeding in the dispositional phase of a criminal proceeding——a proceeding that is not criminal in its attributes or purposes."  Id.

¶35  In Koput we concluded that, given the nature of the responsibility phase, a unanimous jury verdict on the issue of mental responsibility was not required.  Id. at 373-74.  In rejecting a contrary conclusion, we said that the guilt and responsibility phases are not "but divisions of a single criminal trial":

> The thesis of the public defender that the responsibility phase is but one part of a single criminal proceeding, and therefore must, in all respects, be treated in the same way as the guilt phase, is unsupportable.  The public defender's syllogism——a criminal defendant has a constitutional right to a unanimous verdict in a criminal case; the responsibility phase of a sequential trial is a part of a criminal trial, therefore the five-sixths verdict returned in Koput's case denied him a constitutional verdict——is flawed, because it is demonstrably evident that the responsibility phase is not a part of a "criminal" trial.  The entire history of bifurcated trials . . . makes evident that the purpose of each of the two phases is entirely different.

Id. at 394-95. With regard to the purpose of the responsibility phase, we observed that "in considering the question of

21

insanity, 'we are largely concerning ourselves with the difference in the institutional treatment of the defendant,'" and added that the question to be answered in the mental responsibility phase is "noncriminal": "[t]he mental state, other than criminal intent, at the time of a crime is no more a matter of criminal inquiry than an inquest into mental responsibility at the time of the execution of a will." Id. at 392, 396 & n.17 (citation omitted). In fact, although an NGI plea is described in Wis. Stat. § 971.15(3) as an "affirmative defense,"

> [i]t is obvious . . . that the affirmative defense mentioned in sec. 971.15(3) is of an entirely different nature from affirmative defenses utilized by defendants in the guilt phase, i.e., alibi, privilege, et cetera, which if proved result in an outright dismissal of the charge. Success on the affirmative defense of mental disease or defect does not have that result; rather, it is an affirmative defense to "responsibility"——it relieves the person of the sanctions for criminal conduct. It does not relieve the person already found guilty in the first phase of the factual finding of criminal conduct. Rather, the successful assertion of the affirmative defense in phase two results in a noncriminal-sanction disposition.

Id. at 388.

¶36 In sum, in assessing exactly what the federal and state constitutions require in this case, we must bear in mind that "[t]he civil hues of the responsibility phase, coupled with the fact that bifurcation and the NGI plea are statutory in nature, not constitutional, remove the proceeding from the exacting demands of criminal proceedings and leave it in a

22

category of its own."   Magett, 355 Wis. 2d 617, ¶40 (citation omitted).

C.  Whether the Fundamental Right of Criminal Defendants to Testify in Their Own Defense Applies at the Responsibility Phase of Bifurcated NGI Proceedings

¶37 As stated, the right to testify identified in Rock is not explicitly listed in any one provision of the federal constitution, but instead has multiple "sources" in that document.  Rock, 483 U.S. at 51.  It is therefore appropriate to note that "[t]he inference of [constitutional] rights is not, of course, a mechanical exercise. . . .  [T]he right must be independently found in the structure and history of the constitutional text."  Faretta, 422 U.S. at 819 n.15.  See also id. ("The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right" (citation omitted).).  Much of what has been said in the realm of substantive due process analysis, which sometimes calls for the protection of rights implicit in the text and structure of the constitution, see, e.g., Washington v. Glucksberg, 521 U.S. 702, 719-20 (1997), is applicable to the general practice of identifying constitutional rights not explicitly stated in the federal or state constitutions.  "By extending constitutional protection to an asserted right . . . we, to a great extent, place the matter outside the arena of public debate and legislative action."  Id. at 720.  "[G]uideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.  The doctrine of judicial self-

restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (citations omitted).

¶38 In Lagrone's view, we need not "break new ground" but instead should simply apply the right identified in Rock to the responsibility phase of bifurcated NGI proceedings. Yet, close examination of that right establishes that it does not govern here.

¶39 The Rock Court indicated that the right to testify it identified was not one established in the common law at the time of the framing of the federal constitution. Rock, 483 U.S. at 49. "[T]he historic common-law view . . . was that all parties to litigation, including criminal defendants, were disqualified from testifying because of their interest in the outcome of the trial." Id. (citation omitted); see also Ferguson v. Georgia, 365 U.S. 570, 574 (1961) ("Disqualification for interest was thus extensive in the common law when this Nation was formed. Here, as in England, criminal defendants were deemed incompetent as witnesses" (citation omitted).).[19] The Court focused on the

---

[19] Care should be taken to distinguish between a criminal defendant's right to testify in his or her own behalf and a defendant's ability at common law to provide unsworn testimony. See generally, e.g., Mitchell v. United States, 526 U.S. 314, 332-36 (1999) (Scalia, J., dissenting) ("[C]ommon-law evidentiary rules prevented a criminal defendant from testifying in his own behalf even if he wanted to do so. That is not to say, however, that a criminal defendant was not allowed to speak in his own behalf . . . . Traditionally, defendants were expected to speak rather extensively at both the pretrial and trial stages of a criminal proceeding" (emphasis added) (citation omitted).).

24

later formation of the "considered consensus of the English-speaking world" that criminal defendants were competent to testify in their own behalf, and concluded that "[a]t this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  Rock, 483 U.S. at 49-50 (citation omitted).[20]

¶40  The fundamental right identified by the Rock Court is not some generalized right to testify; it is instead "[t]he right to testify on one's own behalf at a criminal trial." Rock, 483 U.S. at 51 (emphasis added); see also id. at 45 ("The issue presented in this case is whether Arkansas' evidentiary rule prohibiting the admission of hypnotically refreshed testimony violated petitioner's constitutional right to testify on her own behalf as a defendant in a criminal case" (emphasis added).).  The right guarantees a criminal defendant the ability to use his or her own words in order to defend against attempts by the State to establish the defendant's criminal liability.

¶41  Thus defined, few could quarrel with the Rock Court's statement that the existence of the right, "[a]t this point in the development of our adversary system, [] cannot be doubted." Id. at 49.  But Lagrone faces a considerably more difficult challenge convincing this court that the "considered consensus

---

[20] With regard to the eventual formation of this consensus, we note that nine states had enacted competency statutes at the time of the adoption of the Fourteenth Amendment.  Mitchell, 526 U.S. at 335-36 (Scalia, J., dissenting).

25

of the English-speaking world" is that criminal defendants possess the same fundamental right to testify: (1) at a statutory, noncriminal proceeding to which they have no independent constitutional right; (2) as to matters relevant, not to the criminal question of whether they committed the conduct alleged, but to the moral question of their future institutional treatment.  In a nutshell, the fundamental right to testify on one's own behalf at a criminal trial does not exist at the responsibility phase of bifurcated NGI proceedings because "it is demonstrably evident that the responsibility phase is not a part of a 'criminal' trial."  Koput, 142 Wis. 2d at 395.  The responsibility phase does not pertain to defense against accusations of criminal behavior.

¶42 The conception of the Rock right to testify as belonging to criminal defendants to use in their own defense against criminal charges follows from the nature of certain of the right's sources as identified by the Rock Court.  For instance, the right arises from the Fifth Amendment because "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so."  Rock, 483 U.S. at 53 (emphasis added) (citation omitted).  The purpose of the Fifth Amendment privilege "was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime."  Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) (citation omitted).  The privilege thus protects against compelled incriminating testimony——testimony relevant to the question of whether an

26

individual has engaged in criminal conduct. See Incriminating, Black's Law Dictionary (10th ed. 2014) (defining "incriminating" as "[d]emonstrating or indicating involvement in criminal activity"); Incriminating Statement, Black's Law Dictionary (10th ed. 2014) (defining "incriminating statement" as "[a] statement that tends to establish the guilt of someone, esp. the person making it"). Insofar as the right to testify is a "necessary corollary" of the Fifth Amendment, Rock, 483 U.S. at 52 (emphasis added), it guarantees individuals the right to testify as to matters pertaining to the validity of the criminal charges against them. Such testimony is not necessary——or appropriate——in the responsibility phase, because that phase is not concerned with whether a defendant has engaged in criminal activity. Any Fifth Amendment right to testify is instead vindicated in the guilt phase.[21]

¶43 Lagrone relies on State v. Langenbach, in which the court of appeals concluded that the Fifth Amendment privilege against self-incrimination extends to the responsibility stage of bifurcated NGI proceedings, to argue that its corollary must also extend to that phase. State v. Langenbach, 2001 WI App 222, 247 Wis. 2d 933, ¶20, 634 N.W.2d 916. But what we have already said shows that that claim must fail. To the extent that Langenbach rested its holding on the notion that Fifth

---

[21] The same reasoning applies to the privilege against self-incrimination contained in Article I, Section 8 of the Wisconsin Constitution.

Amendment protections continue past the entry of a guilty plea, Langenbach, 247 Wis. 2d 933, ¶¶9-13, we agree that the Fifth Amendment privilege is applicable in "any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate [an individual] in future criminal proceedings." Lefkowitz, 414 U.S. at 77 (citation omitted). Yet although a witness might incriminate herself at both criminal and civil proceedings, the range of settings at which a witness might have legitimate reason to offer testimony pertaining to her criminal guilt is considerably narrower. It does not include the responsibility phase of bifurcated NGI proceedings, which does not pertain to issues of criminal liability.

¶44 The alternative interpretation——that the Fifth Amendment right to testify is available wherever the Fifth Amendment privilege is available——has no basis in the federal constitution and is impracticable. That is, although the State may not, without violating the privilege against self-incrimination, establish noncriminal statutory proceedings at which to "by coercion prove a charge against an accused out of his own mouth," Minnesota v. Murphy, 465 U.S. 420, 450 (1984) (citation omitted), this does not require that a witness be permitted to use "any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings," Lefkowitz, 414 U.S. at 77 (citation omitted), as a rostrum from which to protest her innocence or attempt to reduce impending criminal penalties, no

28

matter how irrelevant the proceeding to the witness's criminal guilt.[22]

---

[22] The Langenbach court separately premised its holding that the Fifth Amendment privilege applied at the responsibility phase on its conclusion that the responsibility phase, while not criminal in nature, "remains a part of the criminal case in general." State v. Langenbach, 2001 WI App 222, ¶19, 247 Wis. 2d 933, 634 N.W.2d 916 (citation omitted). The intended constitutional meaning of that statement is unclear. If the court meant that, regardless of whether a criminal defendant's testimony in the responsibility phase might incriminate the defendant in any future proceeding, the privilege applies because a statement might be "incriminating" for purposes of the responsibility phase itself, the court was incorrect. See Allen v. Illinois, 478 U.S. 364, 368 (1986) ("What we have here . . . is not a claim that petitioner's statements to the psychiatrists might be used to incriminate him in some future criminal proceeding, but instead his claim that because the sexually-dangerous-person proceeding is itself 'criminal,' he was entitled to refuse to answer any questions at all."). As we have explained, the responsibility phase is not criminal in nature or purpose. Therefore, a statement at that phase, by definition, could only be "incriminating" for purposes of some other proceeding. In any event, that line of reasoning was apparently not essential to the Langenbach court's holding.

The Langenbach court relied in part for this portion of its reasoning on its earlier decision in State v. Murdock, 2000 WI App 170, 238 Wis. 2d 301, 617 N.W.2d 175, where it had concluded that a criminal jury waiver statute applied to the responsibility phase. Murdock, 238 Wis. 2d 301, ¶¶2, 19. The Murdock court stated in the course of its analysis that "[t]he statutes governing the procedures for trying [NGI] pleas . . . have kept the responsibility phase and guilt phase attached in procedure even as they are detached in nature and purpose." Id. at ¶24.

(continued)

29

¶45 As discussed, the right of criminal defendants to testify in their own behalf also has a source in the Compulsory Process Clause, because "[l]ogically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense,' United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982), is a right to testify himself, should he decide it is in his favor to do so." Rock, 483 U.S. at 52 (emphasis added). What is not "logically included" in such a right, however, is a right to testify as to matters and in a proceeding applicable, not to a defendant's criminal defense,

---

We do not express an opinion on the merits of Murdock's holding, because the case is distinguishable. The question in Murdock did not involve the interpretation of any constitutional provisions, but instead whether the responsibility phase is part of a "criminal case[]" within the meaning of the jury waiver statute. Id., ¶19 (citation omitted). And the fact that the guilt and responsibility phases are "attached in procedure"——i.e., both "part of the chapter on criminal procedure," id., ¶27——is arguably much more relevant to the question of whether the jury waiver statute applies equally to both phases than it is to a question involving the existence or application of a constitutional right, especially given our earlier case law explaining the noncriminal nature and purpose of NGI proceedings. See, e.g., State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; [and] in relation to the language of surrounding or closely-related statutes . . . .").

Importantly, the Murdock court did not ignore the distinct natures of the guilt and responsibility phases, but instead rested its holding in part on the fact that the purpose of the jury waiver statute is fulfilled both when the jury is sitting as fact-finder (in the guilt phase) and when it is sitting as "moral decision maker" (in the responsibility phase). See Murdock, 238 Wis. 2d 301, ¶26.

but to a defendant's future institutional treatment. See, e.g., Taylor v. Illinois, 484 U.S. 400, 407 (1988) ("[O]ur cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt" (emphasis added) (citation omitted).). The right to testify, insofar as it is grounded in the Compulsory Process Clause, is the right to testify in defense against charges of criminal wrongdoing.[23]

¶46 The Rock Court clearly carved out a specific right to testify: one applicable to criminal defendants with regard to matters pertinent to criminal liability. As we will discuss shortly, the Fourteenth Amendment's guarantee of due process——which is also a basis of the right identified by the Rock Court——still has application to the responsibility phase. But given the previous discussion, we cannot conclude that the right which the Rock court identified——the fundamental right of defendants to testify in their own behalf in a criminal case——of

---

[23] The same reasoning applies to the guarantee of compulsory process in Article I, Section 7 of the Wisconsin Constitution.

necessity applies to a proceeding which is neither criminal in nature nor criminal in purpose.[24]

### D. Whether Any Constitutional Right to Testify Exists at the Responsibility Phase of Bifurcated NGI Proceedings

¶47 Importantly, the Rock Court identified a third basis for its right to testify: the Due Process Clause of the Fourteenth Amendment, Rock, 483 U.S. at 51, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const.

---

[24] In explaining that a criminal defendant's fundamental "right to testify in her own behalf at a criminal trial" is premised in multiple constitutional guarantees, the Rock Court indicated that the right is properly understood as tied to a specific type of testimony——testimony of a criminal defendant pertaining to that defendant's criminal guilt——rather than simply to any specific proceeding or set of proceedings, however denominated. See Rock v. Arkansas, 483 U.S. 44, 51-53 (1987).

Whatever might be said in defense of the "broad principles" enunciated in Rock, see id. at 64 (Rehnquist, C.J., dissenting), we are mindful in considering Rock's sources-plus-consensus methodology that "the main danger in judicial interpretation of the Constitution . . . is that the judges will mistake their own predilections for the law. . . . It is very difficult for a person to discern a difference between those political values that he personally thinks most important, and those political values that are 'fundamental to our society.'" Antonin Scalia, Originalism: the Lesser Evil, 57 U. Cin. L. Rev. 849 (1989). Rock does not provide a basis for extending the specific protection it identified to a special proceeding not criminal in nature or purpose and not mandated by the federal or state constitutions.

amend. XIV.[25]  In the words of the Court, "A person's right to reasonable notice of a charge against him, and <u>an opportunity to be heard in his defense</u>—a right to his day in court—are basic in our system of jurisprudence. . . ."  <u>Rock</u>, 483 U.S. at 51 (citing <u>In re Oliver</u>, 333 U.S. 257, 273 (1948)).  The Court specifically pointed out in a footnote that "[t]his right reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify."  <u>Id.</u> at 51, n.9.[26]

---

[25] Under the doctrine of incorporation, all three constitutional sources of the right to testify as applied in this case are based in the Due Process Clause of the Fourteenth Amendment.  <u>See, e.g.</u>, <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 763 (2010).  This section involves discussion of the right to due process in the sense of due process unconnected to any specific guarantee of the Bill of the Rights.

[26] It was to this due process guarantee of the opportunity to be heard and offer testimony that we compared, in <u>Denson</u>, the Wisconsin Constitution's own guarantee that "[i]n all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . ."  Wis. Const. art. I, § 7; <u>see State v. Denson</u>, 2011 WI 70, ¶51, 335 Wis. 2d 681, 799 N.W.2d 681 (citing Wis. Const. art. I, § 7).

(continued)

¶48 Although the fundamental right of criminal defendants to testify in their own defense, even as based in the Fourteenth Amendment, does not apply in the responsibility phase of bifurcated NGI proceedings because that phase is not relevant to criminal liability, the phase is not necessarily exempted from the broad mandates of the Due Process Clause. "The requirements of procedural due process apply . . . to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). And where the Due Process Clause applies, it requires, "at a minimum, that absent a countervailing state interest of overriding significance,

---

This court has never concluded that a criminal defendant's "right to be heard by himself and counsel" provides, of its own force, the same fundamental right to testify in one's own behalf at a criminal trial as that identified by the Supreme Court in Rock. Given that criminal defendants as a group were not competent to testify as witnesses in Wisconsin until 1869—decades after the Wisconsin Constitution was adopted—the soundness of any such conclusion would be questionable. State v. Albright, 96 Wis. 2d 122, 127, 291 N.W.2d 487 (1980); In re Estate of Johnson, 170 Wis. 436, 436, 175 N.W. 917 (1920); Ferguson v. Georgia, 365 U.S. 370, 598 (1961). Lagrone does not offer any evidence in support of such a view. See also Mitchell, 526 U.S. at 332 (Scalia, J., dissenting) ("[C]ommon-law evidentiary rules prevented a criminal defendant from testifying in his own behalf even if he wanted to do so. That is not to say, however, that a criminal defendant was not allowed to speak in his own behalf . . ." (emphasis added) (citation omitted).); Moore v. State, 83 Wis. 2d 285, 298, 265 N.W.2d 540 (1978) ("Every person sui juris, who is charged with crime, has the right to try his own case if he so desires. The constitution guarantees him the right to be heard 'by himself' as well as by counsel. . . ." (first emphasis added) (citations omitted).).

34

persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Boddie v. Connecticut, 401 U.S. 371, 377 (1971); see also Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); Piper v. Popp, 167 Wis. 2d 633, 644, 482 N.W.2d 353 (1992).

¶49 Although the State has established that Lagrone committed the criminal conduct alleged, "the successful assertion of the affirmative [NGI] defense in phase two results in a noncriminal-sanction disposition." Koput, 142 Wis. 2d at 388. We can assume for the sake of argument that Lagrone possesses a due process (as opposed to statutory) right to an opportunity to be heard and offer evidence, including in the form of his own testimony, at the responsibility phase of bifurcated NGI proceedings. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (procedural due process claims are assessed "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient" (citations omitted)); Langenbach, 247 Wis. 2d 933, ¶13 (noting the "legitimate impending threat of the deprivation

35

of [the defendant's] liberty, either through commitment to a mental hospital or imprisonment").

¶50 We can assume this fact because Lagrone was indeed offered such an opportunity to be heard and to offer testimony. Lagrone was present at a two-day proceeding during which several individuals presented testimony relevant to Lagrone's mental responsibility. The circuit court asked Lagrone directly at the close of evidence whether he agreed with his attorney that he did not wish to present any further evidence, and Lagrone responded in the affirmative.[27] We therefore need not determine whether Lagrone possessed a due process right to an opportunity to be heard and offer testimony at the responsibility phase of a bifurcated NGI proceeding, and the contours of such a right, because he was afforded such an opportunity in this case.[28]

E. Whether a Circuit Court is Required to Conduct a Right-to-Testify Colloquy at the Responsibility Phase of Bifurcated NGI Proceedings and Whether an Evidentiary Hearing is Required When a Defendant Alleges Waiver of a Right to Testify at That Phase

---

[27] See supra n.13.

[28] We do not in any way disavow our recent decision in Magett. In that case we examined, among other things, the ability of criminal defendants to testify during the responsibility phase, and the relative value of such testimony. See Magett, 355 Wis. 2d 617, ¶¶7-8. We also discussed the proper timing of dismissals or directed verdicts during the responsibility phase. See id., ¶9. The case did not, however, involve an inquiry into the separate question of whether a defendant has a constitutional right to testify at the responsibility phase.

¶51 As stated, the fundamental right to testify in one's own behalf as a defendant in a criminal case does not exist at the responsibility phase of bifurcated NGI proceedings because that phase is a noncriminal proceeding to which defendants possess no constitutional right. At most, Lagrone possessed a general due process right to be heard and offer testimony during the responsibility phase, just as an individual might in other noncriminal proceedings such as, for example, certain proceedings under Wis. Stat. ch. 980, which governs the commitment of sexually violent persons. See State v. Burris, 2004 WI 91, ¶22, 273 Wis. 2d 294, 682 N.W.2d 812; see also Rock, 483 U.S. at 51 n.9 (citations omitted); State ex rel. Vanderbeke v. Endicott, 210 Wis. 2d 502, 513-14, 563 N.W.2d 882 (1997) ("Revocation of probation is a civil proceeding in Wisconsin. A probationer is therefore not entitled to the full panoply of rights accorded persons subject to criminal process. It is well settled, however, that a probationer is entitled to due process of law before probation may be revoked.").

¶52 Any such right is not independently grounded in the Fifth or Sixth Amendments and is not the fundamental right for which this court in Weed established the requirement that circuit courts conduct waiver colloquies with criminal defendants. See Weed, 263 Wis. 2d 434, ¶40. As we recognized in Weed, "only a minority of jurisdictions impose an affirmative duty on circuit courts to conduct an on-the-record colloquy to ensure that a criminal defendant is knowingly, intelligently, and voluntarily waiving his or her right to testify." Id.,

37

¶41. Given that the general practice with regard to the fundamental right of criminal defendants to testify in their own behalf is not to require a colloquy, we decline to create such a requirement where a fundamental right has not been identified. It is difficult to see why such a requirement would not be logically applicable to many other noncriminal proceedings.

¶53 We emphasize again that Lagrone does not challenge the plea colloquy that occurred during the guilt phase of his bifurcated NGI proceedings, and does not argue that he was unaware that, by pleading guilty to the criminal charges against him, he was waiving his fundamental right to testify at a criminal trial pertaining to the validity of those charges. Nothing in this opinion affects the fundamental right of a criminal defendant to testify in his or her own behalf at a criminal trial, and nothing in this opinion affects Weed's instruction that a right-to-testify colloquy occur at such a proceeding. See id., ¶2. But because this fundamental right is not applicable in the responsibility phase of bifurcated NGI proceedings, we decline to mandate that a colloquy occur at that phase. While the responsibility phase is undoubtedly an important proceeding for criminal defendants, any requirement of a colloquy in that phase should come from the legislature. We note, however, that it may well be the best practice for circuit courts to ask defendants directly at the responsibility phase whether they wish to testify. See, e.g., Denson, 335 Wis. 2d 681, ¶¶58, 67 (recommending an on-the-record colloquy

regarding a criminal defendant's right not to testify as the "better practice").

¶54 Here, without proceeding further to the responsibility phase of the trial, Lagrone would stand convicted and poised for sentencing. The responsibility phase is, as a practical matter, quite distinct from the guilt phase. If the State prevails at the guilt phase, the defendant, who then bears the burden of proof, would seek to prove that he or she should receive mental treatment rather than a criminal sentence. Simply stated, the responsibility phase, wherein the defendant bears the burden of proof, is altogether different from the guilt phase of the trial.

¶55 To the degree that Lagrone was owed an opportunity to be heard, he was granted such an opportunity. Lagrone has not made the requisite showing for an evidentiary hearing; more is required. See State v. Allen, 2004 WI 106, ¶¶9, 12-13, 274 Wis. 2d 568, 682 N.W.2d 433; cf. State v. Balliette, 2011 WI 79, ¶¶3, 18, 336 Wis. 2d 358, 805 N.W.2d 334. With regard to the strategic decision of the specific evidence a defendant will present during the responsibility phase in order to meet his or her burden, "the decision whether to testify should be made by the defendant after consulting with counsel," but "counsel, in the absence of the express disapproval of the defendant on the record during the pretrial or trial proceedings, may waive" any right to testify that a defendant possesses at that hearing. Albright, 96 Wis. 2d at 133.

¶56 Here, Lagrone's attorney informed the circuit court at the close of evidence that Lagrone had no further evidence to present. Lagrone, when questioned by the circuit court on that point, agreed. The record is devoid of any indication that Lagrone voiced a wish at trial to testify, or that the circuit court or Lagrone's attorney prevented Lagrone from testifying.[29] See id. Lagrone's sole allegation is that he did not understand that he could testify, and he does not even explain the substance of his proposed testimony. Without more, we see no need to remand for an evidentiary hearing. The postconviction court did not erroneously exercise its discretion in denying Lagrone's postconviction motion, because Lagrone was afforded

---

[29] As discussed, supra n. 11, certain of the documents signed by Lagrone prior to the responsibility phase, such as the plea questionnaire form, contain handwritten notes in the margins potentially relevant to Lagrone's opportunity to testify. For instance, on the plea questionnaire form under the heading "Constitutional Rights," and next to the checked box reading "I give up my right to testify and present evidence at trial," the following is handwritten: "True for Phase I, not for II." Although the notes do not affect the outcome of this case, we observe that, if anything, they suggest that Lagrone and his counsel indeed understood that Lagrone could present evidence and testimony during the responsibility phase.

The provenance of the notes is unknown, and Lagrone argues before this court that their precise meaning is ambiguous, but this claim alone does not justify remand for an evidentiary hearing. Lagrone's postconviction motion does not set forth any factual allegations relevant to why the presence of the handwritten notes would mandate a hearing; he simply states in the motion, "[T]he plea questionnaire and waiver of rights form for phase one note[s] that [Lagrone] was not giving up the right to testify in the mental responsibility phase."

all the process he was due. See Allen, 274 Wis. 2d 568, ¶¶9, 12-13 (if postconviction motion does not raise facts sufficient to entitle movant to relief, or presents only conclusory allegations, or if record conclusively demonstrates that the defendant is not entitled to relief, circuit court has discretion to deny evidentiary hearing, which decision is reviewable under deferential erroneous exercise of discretion standard).

## V.  CONCLUSION

¶57  We conclude that, although a better practice, a circuit court is not required to conduct a right-to-testify colloquy at the responsibility phase of a bifurcated trial resulting from a plea of not guilty by reason of mental disease or defect.  Further, Lagrone is not entitled to an evidentiary hearing because he has not made the requisite showing for such a hearing.  Accordingly, we affirm the decision of the court of appeals.

*By the Court.*— The decision of the court of appeals is affirmed.

¶58 ANN WALSH BRADLEY, J. *(dissenting).* At issue in this case is whether a circuit court is required to conduct an on-the-record colloquy regarding the waiver of the right to testify at the responsibility phase of a bifurcated criminal trial.

¶59 Lagrone asserts that he had a right to testify at the responsibility phase of a bifurcated criminal trial and that an on-the-record right to testify colloquy is required. Even the State concedes that he has such a right, but contends that it is not a fundamental right requiring a colloquy.

¶60 Ultimately the majority concludes that "although a better practice," a circuit court is not required to conduct a right to testify colloquy at the responsibility phase of a bifurcated trial. In reaching its conclusion that no colloquy is required, the majority skews the record and contravenes controlling precedent.

¶61 Contrary to the majority, I conclude that precedent mandates more than a "better practice" admonition. Both the United States Supreme Court and Wisconsin precedent support the conclusion that there is a fundamental right to testify at the second phase of a bifurcated criminal trial conducted pursuant to Wis. Stat. § 971.165(1)(a).[1] A right to testify colloquy is

---

[1] When a defendant pleads not guilty by reason of mental disease or defect, the circuit court follows the procedure for a bifurcated trial set forth in Wis. Stat. § 971.165(1)(a) which provides:

(continued)

1

required in order to ensure that a defendant knowingly, intelligently and voluntarily waived the fundamental right to testify.[2] I would reverse the court of appeals and remand to the circuit court for an evidentiary hearing.[3] Accordingly, I respectfully dissent.

---

There shall be a separation of the issues with a sequential order of proof in a continuous trial. The plea of not guilty shall be determined first and the plea of not guilty by reason of mental disease or defect shall be determined second.

If the defendant pleads guilty or is found guilty by a jury during the first phase, the trial proceeds to the second phase. In the second phase, a jury determines whether "as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." Wis. Stat. § 971.15(1).

[2] Lagrone also asserts a claim under the Wisconsin Constitution. Article I, Section 8 of the Wisconsin Constitution states in part: "No person . . . may be compelled in any criminal case to be a witness against himself or herself." However, he does not argue this claim separately from his federal constitutional claim. Accordingly, we address the arguments as presented by Lagrone.

[3] Pursuant to State v. Garcia, 2010 WI App 26, ¶¶1, 9, 14, 323 Wis. 2d 531, 779 N.W.2d 718, when a circuit court fails to conduct a colloquy regarding the waiver of the right to testify, the defendant's remedy is an evidentiary hearing. The harmless error analysis set forth in State v. Nelson, 2014 WI 70, 355 Wis. 2d 722, 849 N.W.2d 317, does not apply because Lagrone filed his motion prior to this court's decision in Nelson. Additionally, Nelson arguably is distinguishable because it applies to the denial of a defendant's assertion of the right to testify, not a circuit court's failure to conduct a colloquy. Id. at ¶15-16.

I.

¶62 At the outset, I observe that the majority opinion skews the evidentiary record in this case. It obfuscates an important fact and minimizes others.

¶63 The majority obfuscates the fact that the circuit court failed to conduct a colloquy regarding the waiver of Lagrone's right to testify at either phase of the bifurcated trial. It correctly states that at the responsibility phase the circuit court neither informed Lagrone that he had a right to testify, nor asked Lagrone whether he was waiving his right to testify. See Majority op., ¶13. However, it fails to acknowledge that at the guilt phase of the trial the circuit court also failed to conduct the required colloquy regarding the right to testify.

¶64 The colloquy with Lagrone during the guilt phase of the bifurcated trial is buried in a footnote in the majority opinion. See majority op., ¶11 n.12. The circuit court did not question Lagrone about whether he understood that he was waiving his right to testify:

> Do you understand that by pleading guilty in the first phase of this case, you give up all those rights, like the right to have a trial on whether you committed these crimes and the right to force the State to prove you committed these crimes and the right to present witnesses about whether you committed the crimes, all those rights, did you understand all those and understand that you're giving them up? Majority op, ¶11 n. 12.

¶65 Under State v. Weed, 2003 WI 85, ¶43, 263 Wis. 2d 434, 666 N.W.2d 485, this was an insufficient plea colloquy. Weed

3

requires that a circuit court conduct an on-the-record, right to testify colloquy. "The colloquy should consist of a basic inquiry to ensure that (1) the defendant is aware of his or her right to testify and (2) the defendant has discussed this right with his or her counsel." Id., ¶43.

¶66 The majority skirts this deficiency by telling the reader only that "Lagrone does not challenge the plea colloquy that occurred during the guilt phase of his bifurcated NGI proceedings." Majority op., ¶4. Further obscuring the deficiency in another footnote, the majority explains that "nothing in this opinion affects our instruction in State v. Weed that circuit courts conduct an on-the-record colloquy at a criminal trial, or at the guilt phase of bifurcated NGI proceedings, to ensure that the defendant is knowingly, intelligently, and voluntarily waiving his or her fundamental right to testify." Majority op., ¶5 n.3.

¶67 Although Lagrone does not challenge the plea colloquy at the guilt phase of the trial, it is problematic to obscure this significant deficiency from the reader. The lack of a colloquy regarding Lagrone's right to testify and waiver of that right at the guilt phase of the bifurcated trial amplifies the absence of a colloquy at the responsibility phase. Without any colloquy at either stage in the proceedings, there is nothing in the record that indicates Lagrone was knowingly, intelligently and voluntarily waiving his right to testify.

¶68 Perhaps because there is nothing in the record regarding Lagrone's waiver of his right to testify, the majority

4

relies on a hand-written note on a plea advisement and a waiver of rights form to suggest that Lagrone knew he had a right to testify. Tucked away in another footnote, the plea form discussion is minimized along with the majority's explanation for that form. <u>See</u> majority op., ¶¶11 n.11, 56 n.29.

¶69 As relevant to the right to testify, it provides:

☒ I give up my right to testify and present evidence at trial. *True for Phase I, Not for II*

The court of appeals interpreted the hand-written notation ("True for phase I, not for II") to mean that Lagrone was preserving his right to testify at the second phase of the trial. <u>State v. Lagrone</u>, No. 2013AP1424-CR, unpublished slip op., ¶18 (Wis. Ct. App. Apr. 7, 2015) (explaining "Lagrone was giving up his right to testify in the first phase but not the second phase of the proceeding.").

¶70 Jettisoning the plain meaning interpretation of the court of appeals, the majority instead grasps at a curious alternative interpretation. By conflating the discreet right of the defendant to testify with the general right to present evidence and testimony, the majority interprets the hand written notation to mean "that Lagrone and his counsel indeed understood that Lagrone could present evidence and testimony during the responsibility phase." Majority op., ¶56 n.29.

¶71 If the majority is going to rely on its curious interpretation of a hand-written note to assert that Lagrone fully understood his right to testify and knowingly, intelligently and voluntarily waived that right at the

5

responsibility phase, then it should not minimize this part of its analysis by relegating it to a footnote. Perhaps by tucking the discussion of the form in a footnote, the majority indicates that it is aware of how slender the reed is upon which it rests its assertion that Lagrone knowingly, intelligently and voluntarily waived his right to testify.

## II.

¶72 Not only does the majority opinion skew the record, it contravenes controlling precedent. Unlike the majority, I would follow well-established United States Supreme Court and Wisconsin precedent in reaching the conclusion that the fundamental constitutional right of a criminal defendant to testify on one's behalf applies during the second phase of a bifurcated criminal trial. Any waiver of that right must be subjected to an on-the-record colloquy to ensure that the waiver is knowingly, intelligently and voluntarily made.

¶73 The legal precedent underpinning my conclusion is straightforward. Although the right to testify at the second phase of a bifurcated criminal trial is an issue of first-impression before this court, the fundamental constitutional right of a defendant to testify on his own behalf is well-established. See Weed, 263 Wis. 2d 434, ¶¶39-40 (a circuit court must conduct a personal colloquy on-the-record in order to ensure that the defendant knowingly, intelligently and voluntarily waived the fundamental right to testify).

¶74 In Rock v. Arkansas, the United States Supreme Court concluded that the right to testify is a "necessary corollary to

6

the Fifth Amendment's guarantee against compelled testimony." Rock, 483 U.S. 44, 52 (citing Harris v. New York, 401 U.S. 222, 230 (1971)). When a criminal defendant has Fifth Amendment privilege against self-incrimination, there is also a corresponding right to testify in one's defense.[4]

¶75 As the Rock court explained, "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." Id. at 53 (citing Harris, 401 U.S. at 225). The Fifth Amendment's privilege against self-incrimination "is fulfilled only when an accused is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will." Id. (citing Malloy v. Hogan, 378 U.S. 1, 8 (1964) (emphasis removed)). Accordingly, the choice of whether to testify is an exercise of the constitutional privilege. Id.

¶76 In Wisconsin, the Fifth Amendment privilege applies beyond the guilty phase of the bifurcated criminal trial.[5] Over thirty years ago, this court determined that the Fifth Amendment privilege "continues at least until sentencing." State v.

---

[4] The Fifth Amendment privilege applies to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

[5] The majority acknowledges that Wisconsin's Fifth Amendment jurisprudence conforms generally with the U.S. Supreme Court jurisprudence. See Majority op., ¶43. As the U.S. Supreme Court explained in Lefkowitz v. Turley, 414 U.S. 70, 77 (1973), the Fifth Amendment privilege is applicable in "any [] proceeding, civil or criminal, formal or informal, where the answers might incriminate [an individual] in future criminal proceedings."

7

McConnohie, 121 Wis. 2d 57, 63, 358 N.W.2d 256 (1984). Twenty years ago, this court determined that a defendant retains his or her Fifth Amendment privilege while an appeal is pending or before the time for an appeal as of right or plea withdrawal has expired. State v. Marks, 194 Wis. 2d 79, 92, 533 N.W.2d 730 (1995).

¶77 For the past fifteen years, it has been well-established that the Fifth Amendment applies to the second phase of a bifurcated criminal trial. State v. Langenbach, 2001 WI App 222, ¶9, 247 Wis. 2d 933, 634 N.W.2d 916. As the Langenbach court explained, "[b]ecause there is a possibility that Langenbach could be sentenced in this matter if the jury finds him to be mentally responsible for his actions, his Fifth Amendment privileges survive his no contest pleas." Id.

¶78 Thus, the inexorable conclusion is that Lagrone has a Fifth Amendment right to testify at the second phase of his bifurcated criminal trial. The United States Supreme Court instructs that the right to testify is a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Rock, 483 U.S. at 52 (citing Harris, 401 U.S. at 230). Under Wisconsin law, the Fifth Amendment privilege against compelled testimonial self-incrimination continues through the mental responsibility stage of a bifurcated criminal trial. Langenbach, 247 Wis. 2d 933, ¶20.

¶79 Despite the overwhelming weight of the law to the contrary, the majority concludes that the fundamental right to testify on one's own behalf at a criminal trial does not extend

8

to the responsibility phase of bifurcated criminal trial. Majority op., ¶41. As observed above, in reaching this conclusion the majority contravenes both Unites States Supreme Court precedent and Wisconsin law.

¶80 The majority protests Rock's determination that the right to testify is a "necessary corollary" to the Fifth Amendment privilege against self-incrimination. According to the majority, the conclusion that the right to testify is available wherever the Fifth Amendment privilege is available "has no basis in the federal constitution and is impracticable." Majority op., ¶44. In its attempt to deny Lagrone his Fifth Amendment right to testify here, the majority creates a straw man out of the fear that every litigant in every proceeding——civil and criminal——will now have a right to testify.

¶81 The majority's fear of unlimited and impracticable expansion of the Fifth Amendment right to testify is unfounded. Lagrone never argues that the Fifth Amendment fundamental right to testify is applicable to every proceeding. Rather, the issue before the court in this case is limited to whether the Fifth Amendment right to testify applies to the second phase of a bifurcated criminal trial, not whether it applies to every imaginable proceeding.

¶82 Relying on State v. Magett, 2014 WI 67, 355 Wis. 2d 617, 850 N.W.2d 42 and State v. Koput, 142 Wis. 2d 370, 418 N.W.2d 804 (1988), the majority misconstrues Wisconsin law by arguing that the responsibility phase of the bifurcated trial is not a criminal trial and therefore the rights afforded a

9

criminal defendant do not apply.[6]  According to the majority, the fundamental right to testify identified by the Rock court "is not some generalized right to testify; it is instead '[t]he right to testify on one's own behalf at a criminal trial.'"  Majority op., ¶40 (citing Rock, 483 U.S. at 51).

¶83  The majority disregards Wisconsin case law that is directly on point.  In State v. Murdock, the court of appeals explained the interconnection between the first and second phases of a bifurcated criminal trial.  2000 WI App 170, ¶¶24-25, 238 Wis. 2d 301, 617 N.W.2d 175.

¶84  Relying on Koput, the Murdock court explained that the mental responsibility phase could have evolved as an entirely separate procedure from the guilt phase.  Id., ¶24 (citing Koput, 142 Wis. 2d at 394).  As Murdock correctly acknowledged, the statutes governing the bifurcated trial for NGI pleas remains in Chapter 971, which governs criminal procedure.  The legislature has "kept the responsibility phase and guilt phase attached in procedure even as they are detached in nature and purpose."  Id.  Thus, the Murdock court considered that "the

---

[6] In State v. Koput, this court determined that "the responsibility phase of the bifurcated trial is not an integral part of the criminal trial, but is rather a special proceeding in the criminal process. . . ."  142 Wis. 2d 370, 374, 418 N.W.2d 804 (1988).  More recently, in State v. Magett, this court explained that the "history of trials involving NGI pleas demonstrates that the current responsibility phase has undergone a transformation from a criminal proceeding to something close to a civil trial."  2014 WI 67, ¶39, 355 Wis. 2d 617, 850 N.W.2d 42.

10

responsibility phase has not been procedurally removed from the criminal proceedings." Id. at ¶25.

¶85 The majority fails to address Murdock head-on and instead attempts to distinguish it in a footnote. See Majority op., ¶44 n.22. According to the majority, the fact that the guilt and responsibility phases are attached in procedure is much more relevant to the question in Murdock of whether the jury waiver statute applies equally to both phases than it is to the constitutional question here. Id. The majority's analysis of Murdock is cursory and unpersuasive because it provides no reason why the wavier of a right might be different in this case as it relates to the bifurcated procedure.

¶86 Furthermore, in Langenbach, the court of appeals explained that the responsibility phase "remains a part of the criminal case in general." 247 Wis. 2d 933, ¶19. In the same footnote, the majority dispenses with Langenbach. Majority op., ¶44 n.22. It argues that a statement in the responsibility phase could only be incriminating for the purpose of some other proceeding and that "[i]n any event, that line of reasoning was apparently not essential to the Langenbach court's holding." Id. Thus, the majority does not overrule either Langenbach or Murdock, but instead dismisses both opinions in a footnote.

¶87 Rather than follow Murdock and Langenbach, the majority relies on differences relating to the defendant's burden of proof between the two phases of a bifurcated criminal

trial in order to argue that the second phase is not part of the criminal trial.[7]  However, as Justice Gableman stated during oral argument, regardless of the different burden the stakes are the same:

> But in this kind of case, if the defendant does not meet his or her burden, then they wind up like Mr. Lagrone going to the Wisconsin state prison system. And so I'm trying to wrestle with, and I'm wondering if you can help me to resolve, how it would be less important for the personal colloquy at the NGI phase as it is at the guilt or innocence phase?
>
> . . .
>
> The stakes are the same.  Its prison or not prison.

¶88  Not only is the potential outcome after both phases of the trial the same, but the defendant's burden of proof in the second phase may make his or her testimony even more critical than during the first phase.  Given that expert testimony is not a prerequisite to proving a mental disease or defect, it may be the defendant's own testimony that provides the most potent testimony in meeting the burden of proof.  See Magett, 355 Wis. 2d 617, ¶41-44.  By testifying, a defendant has the opportunity

---

[7] First, the defendant, rather than the State, bears the burden of establishing mental disease or defect.  See Wis. Stat. § 971.15(3).  Second, the defendant's burden is "to a reasonable certainty by the greater weight of the credible evidence," rather than "beyond a reasonable doubt."  Id.  Third, the defendant needs only a five-sixths verdict, rather than a unanimous jury.  Magett, 355 Wis. 2d 617, ¶39.  Fourth, in contrast to a criminal trial, a judge may grant a motion to dismiss the NGI defense or direct a verdict in favor of the state if the defendant does not meet his burden."  Id.

to take the stand, face the jury and explain his side of the events, hoping to persuade those who sit in judgment.

¶89 The majority's failure to recognize that the stakes are the same at both phases of a bifurcated criminal trial also impairs the majority's due process analysis. Its analysis rests in part on the faulty premise that it need not address the contours of Lagrone's due process right to testify because "he was afforded such an opportunity in this case." Majority op., ¶50. It seems to believe that because the circuit court asked whether Lagrone wished to present any further evidence, he could infer that the circuit court was asking whether he wished to testify. The analysis fails to recognize that the right to offer evidence and the right to testify on one's behalf are separate rights.

¶90 Although the majority concedes that the responsibility phase is "not necessarily exempted from the broad mandates of the Due Process Clause," its faulty premise leads the majority to abandon the Supreme Court's well-established two-step due process test. Majority op., ¶48. In a procedural due process analysis, the court asks first whether a liberty or property

13

interest exists which has been interfered with by the State.[8] Kentucky Dept. of Corr. V. Thompson, 490 U.S. 454, 460 (1989). Next, the court examines whether the procedures employed were constitutionally sufficient. Id.

¶91 The first step is readily met here. As the United States Supreme Court has determined, procedural due process protections apply when the defendant's interest is the loss of liberty as a result of incarceration. See, e.g., Morrissey, 408 U.S. 471, 481-82 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973). The second phase of a bifurcated criminal trial undeniably results in a loss of liberty. Either Lagrone will be committed to an institution for mental health treatment or he will be sent to prison.

¶92 In its conclusory treatment of the second step, the majority errs because it does not analyze whether the procedures employed were constitutionally sufficient. Although cases involving parole or probation may have required only a hearing with the opportunity to testify, not all situations calling for procedural safeguards require the same procedure. Morrissey, 408 U.S. at 481. The loss of liberty for Lagrone is even

---

[8] With respect to the first step of the analysis, it is well-established that criminal defendants have a due process right to testify at a variety of stages during criminal proceedings. See, e.g., Boardman v. Estelle, 957 F.2d 1523, 1524 (9th Cir. 1992) (sentencing); Ashe v. North Carolina, 586 F.2d 334, 336 (4th Cir. 1978) (sentencing); Gagnon v. Scarpelli, 411 U.S. 778, 782, 786 (1973) (probation revocation); Morrissey v. Brewer, 408 U.S. 471, 489 (1972) (parole revocation); see also Rock, 483 U.S. at 51 n.9.

14

greater than that of a parolee or probationer, because he has not yet been sentenced or committed. Thus, the procedure that is appropriate for a parolee or probationer may be not sufficient for a criminal defendant.

¶93 The majority's analysis fails to recognize that the consequence of losing at the responsibility phase of a bifurcated trial is the same as the consequence of losing at the guilt phase. The stakes are the same——its prison or not prison. Because the stakes are the same at both the first and second phase of a bifurcated criminal trial, I conclude that due process requires the same procedural protection——a right to testify colloquy——at both phases of the bifurcated criminal trial.

¶94 Contrary to the majority, I conclude that precedent mandates more than a "better practice" admonition. Both the United States Supreme Court and Wisconsin precedent support the conclusion that there is a fundamental right to testify at the second phase of a bifurcated criminal trial. A right to testify colloquy is required in order to ensure that a defendant knowingly, intelligently and voluntarily waived the fundamental right to testify. I would reverse the court of appeals and remand to the circuit court for an evidentiary hearing. Accordingly, I respectfully dissent.

¶95 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

15